**David MELLO and Phyllis Mello, Plaintiffs, Appellants,**

v.

**K–MART CORPORATION, et al., Defendants, Appellees.**

**No. 85–1614.**

United States Court of Appeals, First Circuit.

Argued March 6, 1986.

Decided June 4, 1986.

Daniel T. Chabot with whom William J. Griset, Jr. and Latti Associates, Boston,

Mass., were on brief, for plaintiffs, appellants.

James P. Whitters, III with whom Martha J. Koster, Timothy Q. Feeley and Gaston Snow & Ely Bartlett, Boston, Mass., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, TORRUELLA, Circuit Judge, and MALETZ,* Senior Judge.

LEVIN H. CAMPBELL, Chief Judge.

In this products liability action applying Tennessee law, plaintiffs-appellants David and Phyllis Mello appeal from judgments entered in favor of defendants-appellees K–Mart Corporation and Shinn Fu of America, Inc., in the United States District Court for the District of Massachusetts. We affirm.

The evidence introduced at the jury trial tended to show the following. On or about November 7, 1982, while vacationing with his family, David Mello purchased a "K–Mart" brand hydraulic jack with a stated lifting capacity of six tons from a K–Mart store in Goodlettsville, Tennessee, in order to do some repair work on his son's car. After Mr. Mello used the jack to raise his son's car, he crawled beneath the vehicle to inspect a loose muffler clamp. While Mr. Mello was underneath the vehicle, the jack collapsed, pinning him beneath the vehicle and causing him substantial injury.

Mr. Mello and his wife Phyllis brought this action in federal district court against K–Mart, the vendor of the jack, and Shinn Fu, the alleged manufacturer of the jack,[1]

claiming that the jack failed because it was defectively manufactured with contaminated hydraulic fluid. At the conclusion of plaintiffs' opening statement to the jury, the district court directed a verdict for defendant Shinn Fu. The jury returned a verdict on special interrogatories for defendant K–Mart at the close of trial.

On appeal, plaintiffs argue that the district court committed reversible error in (1) directing a verdict for Shinn Fu; (2) making certain evidentiary rulings over plaintiffs' objection; and (3) instructing the jury. We shall address each of these contentions.

### I.

At the conclusion of plaintiffs' opening statement to the jury, defendant Shinn Fu moved for a directed verdict. The district court granted the motion, apparently because of the lack of reference in counsel's opening statement to evidence sufficient to support a finding of liability against Shinn Fu.[2] Plaintiffs argue that this was error, because counsel's opening statement made out a prima facie case of liability against Shinn Fu.

In his opening statement, plaintiffs' counsel said in part,

This case simply involves our claim on behalf of the Mellos that this jack ... was manufactured in Taiwan by both K–Mart and Shinn Fu, and was manufactured in Taiwan with contaminated or dirty hydraulic fluid.

* Of the United States Court of International Trade, sitting by designation.

1. Plaintiffs originally brought suit against both Shinn Fu of America, Inc. and Shinn Fu Auto Supply Company. Defendant Shinn Fu Auto Supply was dismissed prior to trial for lack of personal jurisdiction. *Mello v. K–Mart Corp.*, 604 F.Supp. 769, 771–72 (D.Mass.1985). Plaintiffs do not, on appeal, contest the dismissal of Shinn Fu Auto Supply.

2. The following colloquy took place between the district court and plaintiffs' counsel on Shinn Fu's motion for a directed verdict:

THE COURT: I think he'd be better off with a ruling on that motion, which was to direct a verdict for Shinn Fu. I said I'd check with the

court reporter's notes, but I am looking at my own handwritten notes, which I took fairly carefully during Mr. Griset's opening, and I don't see where Shinn Fu was ever mentioned in the opening.
. . . .
MR. GRISET: As manufacturer, along with K–Mart, I made a reference.
. . . .
THE COURT: Manufacturing isn't the basis of liability without more, and he didn't have the more.
I will direct a verdict as to Shinn Fu and save your rights on it.

. . . .

Hydraulic fluid is an oil substance and must, as the experts will tell you, be kept absolutely clean from the date of manufacture on through the rest of the use of the product. This is the one technical thing that you will have to consider in this trial, ladies and gentlemen: The need for a clean hydraulic fluid system, and this case turns on the absence of a clean hydraulic system in that jack when it left the factory in Taiwan.

We agree with plaintiffs that the court erred in directing a verdict on the opening statement. Counsel stated that the allegedly defective jack was manufactured by both K–Mart and Shinn Fu, thus sufficiently suggesting a basis for liability against Shinn Fu if the jack as manufactured were found to be defective.

■ However, the district court's error in directing a verdict for Shinn Fu at the outset of trial was harmless given the jury's conclusion that there was no defect in manufacture. *See* 28 U.S.C. § 2111 (1982) ("errors or defects which do not affect the substantial rights of the parties" are not grounds for reversal); *see also* Fed.R.Civ.P. 61. At the close of trial, in response to special interrogatories, the jury found that (1) neither K–Mart nor any other company for whose actions K–Mart was legally responsible had negligently manufactured or sold the jack; (2) K–Mart had not breached any implied warranty of merchantability by selling a jack that was defective, dangerous, and therefore not fit for its ordinary purpose; and (3) although K–Mart was, or held itself out as, the manufacturer of the jack, the jack was not in a condition unreasonably dangerous to the user when sold by K–Mart.

These findings, taken together and in context, are consistent only with a determination by the jury that the jack in question was not defective. It follows that even if Shinn Fu were the manufacturer, its early

release from the case did not affect the ultimate result, which had to be a finding in Shinn Fu's favor. There is no indication that Shinn Fu's absence prevented plaintiffs from presenting all the evidence they had concerning alleged defects in the jack. No additional evidence on that score, that would have come in had Shinn Fu remained a party, has been called to our attention. We note, moreover, that in its answers to interrogatories, Shinn Fu denied any involvement with the manufacture, design, testing, packaging, distribution, sale or promotion of the six-ton jack purchased by Mr. Mello. Because plaintiffs have not given us any reason to believe that the outcome might have been different if Shinn Fu had remained a party defendant to the action, we see no reason to disturb the district court's directed verdict for Shinn Fu.[3]

## II.

Plaintiffs contest two evidentiary rulings made by the district court.

### A. *Admission of the Wachter Letter*

During cross-examination of plaintiff David Mello, K–Mart's counsel offered into evidence a letter dated November 26, 1982, from Jim H. Wachter, plaintiffs' former counsel in Tennessee, to Dr. Medka Suwanaawonjse, a doctor who treated Mr. Mello after the accident, requesting a copy of Dr. Suwanaawonjse's medical report. The Wachter letter contained the following description of Mr. Mello's accident:

Mr. and Mrs. Mello have consulted and retained me relating to his Claim for the multiple injuries received by Mr. Mello when a hydraulic jack placed under an auto he was working on, malfunctioned, resulting in the auto coming down on the left upper portion of his body. Mr. Mello was lying on his right side at the time, being in the process of attempting to tighten the muffler brackets. As I re-

---

**3.** Shinn Fu also argues that the court's premature directed verdict is now sustainable on the ground that the court lacked in personam jurisdiction over Shinn Fu, a claim made in a separate motion never reached by the district court.

While this may be so, we need not decide the matter, given the fact that plaintiffs, in any event, were not prejudiced by Shinn Fu's early dismissal from the case.

call, one of the rear wheels was off the auto for repairs, or whatever.

The Wachter letter was offered in evidence on cross-examination for the purpose of impeaching Mr. Mello's testimony that the left rear wheel was not off the car at the time of the accident, and the district court admitted it with the limiting instruction that it was "being admitted only on the issue of [Mr. Mello's] credibility." Plaintiffs contend that the admission of the Wachter letter for impeachment purposes was improper and prejudicial, because whether the wheel was on or off the car was collateral to the main issues in the litigation.[4]

■ We disagree. Whether the wheel was on or off the car was generally relevant to how the accident happened, and, in particular, to K–Mart's contention that Mr. Mello was contributorily negligent or else had assumed the risk that the jack would collapse. Balancing the letter's probative value against the danger of unfair prejudice, *United States v. Pisari*, 636 F.2d 855, 858 (1st Cir.1981), we cannot say that the district court abused its discretion in allowing K–Mart to use the Wachter letter for the limited purpose of impeaching Mr. Mello's credibility on this matter. Indeed, at another point in the trial, plaintiffs consented to admission of the Wachter letter as part of Mr. Mello's hospital record.

### B. *Exclusion of the Deposition Transcripts*

At trial, plaintiffs sought to place in evidence the depositions of M. Pierre LeClerc, manager of K–Mart's in-house testing laboratory, Vernon Berels, an electronic lab technician for K–Mart, and Robert Bleakly, a senior automotive goods buyer for K–Mart. Plaintiffs' purported purpose in offering the LeClerc and Berels depositions was to show that K–Mart's in-house testing laboratory had never tested for contaminants the hydraulic oil used in the six-ton hydraulic jacks before offering them for sale. The district court excluded the depositions on the ground that plaintiffs had failed to make a threshold showing that any such failure to test for contaminants would amount to negligent testing.

■ Plaintiffs argue that the jury could have inferred that K–Mart's testing procedures were negligent because (1) two of plaintiffs' experts testified that the allegedly defective jack failed because of contaminated hydraulic fluid; (2) there was testimony that, for the proper operation of a hydraulic jack, it was vitally important that the hydraulic oil be clean and free of contaminants; and (3) the LeClerc and Berels depositions establish that, when K–Mart tested a sample six-ton hydraulic jack of the type purchased by Mr. Mello, K–Mart did not test the hydraulic fluid. We cannot say the district court erred in refusing to hold that this evidence, without more, created a jury question on the issue of negligent testing. First, plaintiffs' evidence would not even have established that the hydraulic fluid in the jacks had not been tested, as testing may have been performed on the jacks at the time of manufacture. Second, even if the evidence did indicate that the hydraulic fluid was not tested, plaintiffs presented nothing to establish either that it would have been reasonable or feasible for K–Mart to test the fluid in each jack, or, in the alternative, that a spot check of the jacks would have indicated a defect in the jack that actually failed. *See* 1 L. Frumer & M. Friedman, Products Liability § 6.01[2], at 70.68–.72 (1985).

■ Moreover, even were we to assume that the district court erred in excluding

---

4. The district judge originally admitted the letter for impeachment purposes over hearsay objections, stating "[a] party is bound by representations his lawyer makes." On appeal, K–Mart asserts that the letter was admissible under Fed. R.Evid. 801(d)(2)(D) as an admission by a party opponent, because Wachter was acting as the Mellos' "agent or servant ... within the scope of his agency or employment" at the time the statement was made. *See, e.g., Astra Pharmaceutical Products, Inc. v. OSHRC*, 681 F.2d 69, 73 n. 8 (1st Cir.1982). K–Mart further contends that the letter was authenticated by pretrial admissions, and also, by agreement, as a part of Mr. Mello's hospital record. Plaintiffs do not specifically contest the merits of these points.

the LeClerc and Berels depositions, their exclusion would be harmless error. In its answers to special interrogatories on the breach of warranty and strict liability counts, the jury found that K–Mart had not breached any implied warranty of merchantability by selling a jack that was defective, dangerous, and therefore not fit for its ordinary purpose, and that the jack was not in a condition unreasonably dangerous to the user. The jury determined, in effect, that the jack was not defective.

■ Under Tennessee law, a finding that a product is not defective precludes a finding that the seller or manufacturer is liable in negligence, so plaintiffs' cause would not have been furthered by the introduction of evidence that K–Mart was negligent in testing the six-ton jacks. *See Browder v. Pettigrew,* 541 S.W.2d 402, 404 (Tenn.1976) ("[I]n a products liability action in which recovery is sought under the theory of negligence, the plaintiff must establish the existence of a defect in the product just as he does in an action where recovery is sought under the strict liability theory or for breach of warranty, either express or implied."); *see also Witt v. Norfe, Inc.,* 725 F.2d 1277, 1279–80 (11th Cir.1984) (per curiam) (applying Florida law) (finding for defendant on breach of warranty and strict liability counts irreconcilable with finding for plaintiff on negligence count). Put another way, even if K–Mart were negligent in respect to its testing of the six-ton jacks that it offered for sale, that negligence could not have been the proximate cause of plaintiffs' injuries, because *no* amount of testing would have weeded out what, according to the jury, was a non-defective jack.

Plaintiffs offered the Bleakly deposition testimony for the alleged purpose of showing that K–Mart had control over the manufacture and labeling of the allegedly defective jack. The district court excluded Bleakly's testimony on the ground that it tended to show only that K–Mart had approved the labeling of the jack, and did not in any way establish that K–Mart had approved the process by which the jack was manufactured.

■ Plaintiffs do not challenge these reasons for excluding Bleakly's testimony, but urge for the first time on appeal that Bleakly's testimony should have been admitted on the ground that it was relevant to showing the testing procedures employed by K–Mart at the time the allegedly defective jack was manufactured and came into K–Mart's possession. Plaintiffs did not seek to have Bleakly's testimony admitted on this basis at trial, so we cannot consider this argument on appeal. *See Tate v. Robbins & Myers, Inc.,* 790 F.2d 10, 12–13 (1st Cir.1986).

### III.

■ Plaintiffs contend that the district court committed various errors in instructing the jury as follows:

*A. The Use of the Word "Illegal"*

Near the beginning of his instructions to the jury, the district judge said,

Now, I want to tell you, Mr. Foreman and ladies and gentlemen, that Mr. Mello is not entitled to recover against K-mart merely because an accident happened nor can liability of the defendant be presumed from the mere fact that he sustained some physical injuries. The plaintiffs must persuade you that it is more likely true than not true that their injuries were proximately caused by illegal action of the defendants. I will spell it out to you in detail as we get further into the charge.

After the district judge had finished charging the jury, plaintiffs asked for a curative instruction on the use of the word "illegal," on the ground that the jury might have been misled into thinking that defendant had to violate some penal provision before proximate cause could be found. The district judge declined to give the instruction, and plaintiffs argue that this was reversible error.

We disagree. The word "illegal" does not only connote conduct to which some

criminal penalty attaches. One well-known dictionary defines "illegal" as "contrary to or violating a law or rule or regulation or something else (as an established custom) having the force of law." Webster's Third New International Dictionary 1126 (1971). Tortious conduct falls within this definition. The district court, moreover, used the word "illegal" only once in the course of a lengthy jury charge. *See Service Merchandise Co. v. Boyd Corp.*, 722 F.2d 945, 950 (1st Cir.1983) (" 'As long as the judge's instruction properly apprises the jury of the applicable law, failure to give the exact instruction requested does not prejudice the objecting party.' ... On appeal, the charge must be examined as a whole; portions of it are not to be treated in isolation."). We are satisfied that the district judge's single use of the word "illegal" did not create a misleading impression.

B. *The Jury Charge on the Breach of Warranty Count*

■ The district court charged the jury that, under Tennessee law, assumption of the risk was an affirmative defense to a claim of breach of warranty. Plaintiffs argue, as they did below, that the jury should not have been asked on the breach of warranty count to find whether Mr. Mello assumed the risk by voluntarily and unreasonably encountering a known danger, but whether Mr. Mello's actions were the proximate cause of his injuries.

The parties have not cited, and our research has not disclosed, any Tennessee cases squarely on point. We find it unnecessary to examine the merits of plaintiffs' argument, however. Since the jury found that K–Mart did not breach the implied warranty of merchantability on the jack, it never reached the issue of whether Mr. Mello assumed the risk of injury. Even had the district court given the jury a prox-

imate cause instruction instead of an assumption of risk instruction, this would have had no effect on the outcome.

Plaintiffs further contend that, in instructing the jury on the breach of warranty count, the district court erred in failing to distinguish the defendant's duty to warn from the defendant's duty to manufacture and sell non-defective products. The district judge instructed the jury,

In order to recover on his breach of warranty claim Mr. Mello must prove to you that it is more likely so than not that the jack was dangerous and defective when sold....

In this analysis you should consider whether the jack, taken together with any warnings and instructions, was dangerous, defective, or unsafe. In other words, you should decide whether the jack was defective or dangerous if properly used according to the instructions or warnings on the box in which it came.

Plaintiffs argue that, under Tennessee law, the fact that a manufacturer has placed warnings or instructions on a product[5] is irrelevant to the question whether the product was not "fit for the ordinary purposes for which such goods are used." Tenn.Code Ann. § 47–2–314(2)(c) (1979).

■ The parties have not cited, and our research has failed to disclose, any Tennessee authorities squarely addressing this question in the context of a claim for breach of warranty. However, it seems likely that, if confronted with the issue, the Tennessee courts would adopt the view that the presence of warnings or instructions is relevant to a determination whether a product is fit for its ordinary purpose.

The Tennessee courts have held that, in a claim based on strict liability, "[r]elevant to the determination of whether a product is defective and unreasonably dangerous is

---

**5.** The following warnings and instructions were printed on the package of the jack purchased by Mr. Mello in capital letters, accompanied by demonstrative illustrations:

WHEN WORKING UNDER CAR, NEVER USE JACK AS SOLE SUPPORT. USE JACK STANDS OR RAMPS AS SUPPLEMENTARY

SUPPORT. USE ONLY ON FLAT, SOLID SURFACES.

Printed on the label of the jack itself were a set of directions, one of which read:

Do not work underneath any automobile without the use of supporting jack stands or other stationary devices.

the presence or absence of a statement accompanying the product which in some way informs the user of the danger." *Young v. Reliance Electric Co.,* 584 S.W.2d 663, 668 (Tenn.Ct.App.1979); *see also Abbott v. American Honda Motor Co.,* 682 S.W.2d 206, 210 (Tenn.Ct.App. 1984). Courts and commentators that have considered the question have concluded that the elements of a claim based on strict liability and a claim based on breach of implied warranty "are essentially the same." *Gumbs v. International Harvester, Inc.,* 718 F.2d 88, 94–95 (3d Cir.1983) (applying Virgin Islands law) (collecting authorities).

Because the two causes of action are essentially congruent, we see no reason why the warnings or instructions which accompanied the jack would not also be relevant to a determination whether K–Mart broke the implied warranty of merchantability on the jack. We note that Tenn.Code Ann. § 47–2–314(2) (1979) provides that among the factors to be considered in determining whether a good is "merchantable" are whether the good is "adequately contained, packaged, and labeled" and whether it "conform[s] to the promises or affirmations of fact made on the container or label if any."

### C. *The Jury Charge on the Strict Liability Count*

Plaintiffs also argue that the district court erred in failing to distinguish the defendant's duty to warn from the defendant's duty to manufacture and sell non-defective products in instructing the jury on the strict liability count. It follows from what we have said above, however, that this argument is without merit.

### D. *The District Court's Repeated References to the Jack Warnings and Instructions*

Finally, plaintiffs contend that the district judge committed reversible error in placing undue emphasis on the jack warnings and instructions in his charge to the jury. We have reviewed the charge in its entirety, and think that the district court referred to the jack warnings and instructions only so much as was necessary to explain plaintiffs' theories of recovery and K–Mart's defenses. Accordingly, we see no error on this score.

*Affirmed.*