# United States Court of Appeals
## For the First Circuit

No. 02-2232

ARTHUR M. CONNELLY, Administrator DBN of
the Estate of Eduardo Cabrera,

Plaintiff, Appellee,

v.

HYUNDAI MOTOR COMPANY,

Defendant, Appellant,

HYUNDAI MOTOR AMERICA; HYUNDAI AUTO CANADA, INC.

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, U.S. District Judge]

Before

Torruella, Circuit Judge,

Stapleton,* Senior Circuit Judge,

and Howard, Circuit Judge.

Leslie G. Landau, with whom Hitesh S. Barot, Rianne Nolan, Bingham McCutchen, LLP, Brian P. Crosby, Robert G. Scumaci, Gibson, McAskill & Crosby, LLP, Bruce Felmly, and McLane, Graf, Raulerson & Middleton, PA, were on brief, for appellant.
Joseph F. McDowell, III, with whom David C. Dunn and McDowell & Osburn, P.A., were on brief, for appellee.

December 5, 2003

_____

*Of the United States Court of Appeals for the Third
Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**. Hyundai Motor Company ("Hyundai") appeals from a judgment entered in favor of the Estate of Eduardo Cabrera (the "estate") after a jury found Hyundai liable for negligently testing or designing an airbag which killed Eduardo in a car accident.[1]  We affirm.

## I. Background

The tragic circumstances that gave rise to this case occurred on the night of September 13, 1996 in Nashua, New Hampshire.  Eduardo Cabrera, five-years-old, was a passenger in the front seat of his parents', Jose and Miriam Cabrera's, 1995 Hyundai Sonata.[2]  Mr. Cabrera was driving the Sonata home from a family outing to the movies.  At an intersection, the Sonata was struck by another car on the right side.  The collision pushed the Sonata into a light pole.  Upon striking the light pole, the Sonata's driver and passenger airbags deployed.  At the moment of impact, Eduardo was located between three and ten inches from the airbag.  The airbag hit Eduardo under the chin with such force that it severed his spinal cord from his brain and killed him.

As a result of the accident, the estate invoked the federal court's diversity jurisdiction and sued Hyundai for wrongful death under New Hampshire's "crashworthiness" or

---

[1] The estate is represented by its administrator, Arthur M. Connelly.

[2] The Cabreras purchased the Sonata from Hyundai in the summer of 1995.

"enhanced injury" doctrine.[3]  The estate presented its case under two theories.  First, the estate alleged that Hyundai was strictly liable for Eduardo's death.  Under this theory, the estate complained that the airbag system which killed Eduardo had an overly aggressive design and that this defective design caused Eduardo's death.  Second, the estate alleged that Hyundai had negligently designed and/or tested its airbag system and that these lapses proximately caused Eduardo's death.  Hyundai defended by introducing evidence tending to show, inter alia, that the airbag system was not defectively designed and that Eduardo's death was caused by his failure to wear his seatbelt at the time of the accident.

After an eleven-day trial, the jury returned general verdicts exonerating Hyundai on the strict liability count but finding it liable on the negligence count.  The jury did not make any specific factual findings as part of these verdicts. Immediately after the jury returned its verdicts, Hyundai moved to set them aside as inconsistent and asked that the jury be recharged because it could not rationally have reached differing conclusions on the strict liability and negligence counts.  See

---

[3] The crashworthiness or enhanced injury doctrine extends the manufacturer's liability to cases in which the plaintiff suffers separate or enhanced injuries in the course of an initial accident caused by his own vehicle. See Trull v. Volkswagen of Am., Inc., 761 A.2d 477, 479 (N.H. 2000).

Fed. R. Civ. P. 49(b). The district court denied Hyundai's request, accepted the verdicts, and discharged the jury. Hyundai subsequently moved for judgment as a matter of law or for a new trial. The court denied the motion, and Hyundai timely appealed.

## II. Discussion

Hyundai raises three claims on appeal. First, it argues that the district court erroneously permitted the negligence count to go to the jury and that as a result of this error the jury returned inconsistent verdicts. Second, it claims that the district court incorrectly instructed the jury on the limited relevance of evidence showing that Eduardo was not wearing his seatbelt at the time of the accident. Third, it contends that the district court abused its discretion by excluding evidence that, on two occasions prior to the accident, Mr. Cabrera had been cited for violating New Hampshire's mandatory seatbelt for minors law, N.H. Rev. Stat. Ann. § 265:107-a (the "seatbelt law").

### A. The Negligence Count and the Inconsistent Verdicts

Hyundai makes two closely-related arguments concerning the negligence count. First, it argues that the district court erred by instructing the jury on the negligence count. Hyundai believes that the district court should have declined to instruct the jury on this count because "the existence of a defect is a determinative factor in both negligent design and strict liability design defect claims," which makes it unnecessary and confusing

-5-

for the jury to consider both claims. Second, Hyundai asserts that the jury's verdicts were inconsistent because both counts required the jury to find, as an essential element, that the airbag system contained a design defect.

Hyundai's claims are not new to this court. We recently decided two cases in which automobile manufacturers raised essentially these same arguments. See Trull v. Volkswagen of Am., Inc., 320 F.3d 1 (1st Cir. 2002), cert. denied, -- U.S.--, 2003 WL 2129086 (Oct. 6, 2003); Babcock v. Gen. Motors Corp., 299 F.3d 60 (1st Cir. 2002). In those cases, we did not address the manufacturers' arguments de novo because the manufacturers had failed to preserve them. We reviewed the claims only for plain error and permitted the verdicts to stand because the manufacturers had not met the "stringent" plain error requirements. See Trull, 320 F.3d at 6; Babcock, 299 F.3d at 62-66.

Unlike the defendants in Trull and Babcock, Hyundai followed the strictures of Fed. R. Civ. P. 51 and preserved its contention that the district court should have withheld the negligence count from the jury. Accordingly, we will review the district court's decision to instruct the jury on the negligence count de novo. See Crowley v. L.L. Bean, Inc., 303 F.3d 387, 394 (1st Cir. 2002).

In interpreting New Hampshire law, "our task is to

-6-

ascertain the rule the state court would most likely follow under the circumstances, even if our independent judgment on the question might differ." Cruz v. Melecio, 204 F.3d 14, 21 (1st Cir. 2000) (quoting Blinzler v. Marriot Int'l, Inc., 81 F.3d 1148, 1151 (1st Cir. 1996)). In performing this function, we hew closely to the path established by the state's highest court. See Doyle v. Hasbro, Inc., 103 F.3d 186, 192 (1st Cir. 1996) ("we are reluctant to extend state law beyond its well-marked boundaries") (internal quotations omitted). We therefore turn to the New Hampshire Supreme Court's case law to determine whether, as a matter of law, the district court erred by submitting the negligence count to the jury.

The New Hampshire Supreme Court has consistently declined to adopt the rule urged by Hyundai--that a trial court may not instruct a jury on both strict liability and negligence counts in a product liability action. Indeed, on several occasions, the New Hampshire Supreme Court has approved of a jury being simultaneously charged on both counts. See Trull, 761 A.2d at 481; Cyr v. J.I. Case Co., 652 A.2d 685, 693 (N.H. 1995); Thibault v. Sears, Roebuck & Co., 395 A.2d 843, 849 (N.H. 1978). As we observed in Babcock, "the most that can be said is that submission of both claims is frowned upon." 299 F.3d at 65 (citing Thibault, 395 A.2d at 849 ("While . . . both counts are permitted, we do not recommend to plaintiffs that counts in both negligence and strict

-7-

liability . . . be submitted to the jury because of the confusion which is created.")) (emphasis supplied).  As this underscored language from Thibault suggests, the decision whether to risk confusion by submitting both counts to the jury rests with the plaintiff, not the trial court.

To support its claim that New Hampshire law required the district court to withdraw the negligence count from the jury, Hyundai relies heavily on the New Hampshire Supreme Court's decision in Greenland v. Ford Motor Co., 347 A.2d 159 (N.H. 1975).[4] Greenland does not support Hyundai's position.

In Greenland, the plaintiffs were injured when their car spun out of control.  Id. at 161.  They asserted that their injuries were caused by a defective ball and socket assembly in one of the front wheels.  Id. at 162.  At trial, they proceeded on a strict liability theory of design defect and a negligence theory that the defendant's failure to test the vehicle permitted the design defect to persist.  Id. at 163.  The trial court permitted the jury to consider the strict liability claim but dismissed the negligence claim.  Id. at 162-63.  The plaintiffs appealed,

_____

[4] Hyundai also relies on our decision in Mello v. K-Mart Corp., 792 F.2d 1228, 1233 (1st Cir. 1986), where we held that under Tennessee law, the jury's finding that a product was not defective precluded a finding that the seller was liable in negligence for its design.  Putting aside the factual differences between Mello and this case (including that the jury in Mello issued a factual finding that the product at issue was not dangerous), Mello provides little help because it applies Tennessee law.  Our focus here is on the requirements of New Hampshire law.

arguing that the jury should have been instructed on both claims. Greenland, 347 A.2d at 162-63.

The New Hampshire Supreme Court affirmed the decision to withhold the negligence claim from the jury. Id. It concluded that when a negligence claim is premised on the same design defect as a strict liability claim, the trial court has "discretion" to exclude the negligence claim because asking the jury to consider both claims could be "confusing." Id. at 163. In the course of its discussion, however, the court observed that "it is clear that a products liability action grounded on strict liability may be joined with an action grounded on negligence." Id. at 163 (internal citations omitted) (emphasis supplied). Thus, Greenland stands only for the proposition that in cases where the negligence claim is premised on a design defect, a trial court may, in its discretion, withhold the negligence claim from the jury. It does not, as Hyundai suggests, establish a rule that a court must keep the negligence claim from the jury in these circumstances.

In sum, the New Hampshire Supreme Court permits a "strict liability action based upon a theory of defective design [to] be joined with an action grounded in negligence." Trull, 761 A.2d at 481. Thus, the district court did not violate New Hampshire law by instructing the jury on both the strict liability and negligence counts.

Having determined that the district court did not err in

instructing the jury on both counts, we turn to whether Hyundai is nonetheless entitled to relief because the jury's verdicts finding negligence, but not strict liability, are inconsistent. "We note, initially, our substantial reluctance to consider inconsistency in civil jury verdicts a basis for new trials." Kavanaugh v. Greenlee Tool Co., 944 F.2d 7, 9 (1st Cir. 1991) (quoting McIsaac v. Didriksen Fishing Corp., 809 F.2d 129, 133 (1st Cir. 1987)). Before disregarding a verdict, we "must attempt to reconcile the jury's findings, by exegesis if necessary." Acevedo-Diaz v. Aponte, 1 F.3d 62, 74 n.15 (1st Cir. 1993). To perform this analysis, we determine whether the jury, consistent with its instructions, could have found negligence but not strict liability under the facts taken in the light most favorable to the verdict. See Merchant v. Ruhle, 740 F.2d 86, 91 (1st Cir. 1984).

The court instructed the jury that the estate had to prove four elements to hold Hyundai strictly liable:

> One, that the design of the 1995 Hyundai Sonata . . . created a defective condition unreasonably dangerous to the user;
>
> Two, the condition existed when the product was sold by a seller in the business of selling such products;
>
> Three, the use of the product was reasonably foreseeable by the manufacturer;
>
> And, four, the condition caused Eduardo's death.

-10-

To find negligence, the court instructed the jury that the estate had to prove only two elements:

> One, that [Hyundai] failed to exercise reasonable care in designing and testing the airbag in the 1995 Hyundai Sonata, and
>
> Two, that [Hyundai's] failure to exercise reasonable care in designing and testing the airbag in the 1995 Hyundai Sonata caused or contributed to the cause of Eduardo's death which would not otherwise have occurred in the accident.

There are at least two important differences between the district court's negligence and strict liability instructions.[5] First, for negligence, the estate was not even required to prove that the airbag system contained a design defect. It was required to prove only that Hyundai was negligent in testing or designing the airbag system and that this negligence caused or contributed to Eduardo's death. Second, the instructions for each theory presented different standards for assessing the adequacy of the airbag system's design. To find Hyundai strictly liable, the jury was instructed that it had to perform a risk-utility analysis in which it determined that "the magnitude of the danger [of the

---

[5] Hyundai did not object to the district court's instructions on the elements of negligence or strict liability. Indeed, before this Court, Hyundai conceded that the instructions "captured the New Hampshire law on each claim." Thus, in attempting to reconcile the verdicts, we rely on the law as described by the district court, without passing on whether these instructions correctly stated the applicable law.

airbag system] outweighed the usefulness and desirability of the product" to "the public as a whole."  To find Hyundai liable for negligent design, the jury was told that it had to conclude that Hyundai failed to "design the vehicle . . . to avoid an unreasonable risk of injury to the occupant."

Even assuming, as Hyundai argues, that the jury necessarily based its liability verdict on a determination that Hyundai negligently designed the airbag system, the jury, consistent with its instructions and the evidence, could have found negligence without finding Hyundai strictly liable.[6]  The jury could have rejected the strict liability count because it decided that, on balance, the benefit to the public of including the overly aggressive airbag system in the Sonata outweighed the danger caused by the airbag system (because the system saved many more lives than it took).

At the same time, however, the jury could have concluded that Hyundai was negligent in failing to develop a less aggressive airbag system for the Sonata.  The jury heard testimony from an

---

[6] We note that we are not abundantly confident in this assumption.  The jury, instead of finding negligent design, could have found negligent testing.  This would have permitted the jury to find Hyundai liable for negligence without finding that the airbag system was negligently designed.  See Trull, 320 F.3d at 7 (a verdict finding negligence was consistent with a verdict rejecting strict liability, where the jury was instructed that the manufacturer could be liable for "negligent design and/or testing," because the jury could have found the manufacturer liable solely for negligent testing).

expert witness who testified that the Sonata's airbag system contained an unnecessarily aggressive inflator. The same expert also testified that other cars on the market in 1995 contained less aggressive airbag system designs. In light of this evidence, the jury could have decided that a less aggressive design was readily available and in use by other automobile manufacturers.

Under the circumstances, the "jury's efforts to apply the instructions were understandable and had some basis" in the evidence. Merchant, 740 F.2d at 91. There is nothing before us to suggest that the jury was confused by its task or that it shirked its responsibility. Indeed, it appears from the verdicts that the jury understood that "the focus of strict liability is on whether the design itself was unreasonably dangerous whereas in a negligence case the focus is on the conduct of the manufacturer." Trull, 320 F.3d at 7. Thus, we have no reason to reverse the judgment because the jury returned opposite verdicts on the strict liability and negligence counts.

**B.     Instruction on Seatbelt Evidence**

Hyundai's second challenge concerns the district court's instruction limiting the jury's consideration of the evidence that Eduardo was not wearing his seatbelt at the time of the accident. While the court permitted Hyundai to introduce evidence that Eduardo was not wearing his seatbelt, it instructed the jury that its consideration of "[e]vidence of whether or not Eduardo was

-13-

seatbelted is . . . for the limited purpose of deciding whether or not [Hyundai] has proved the superseding cause defense."[7]

Hyundai asserts that the district court committed two errors in so limiting the jury's consideration of this evidence. First, it claims that the court should have instructed the jury that it could consider this evidence for the purpose of evaluating whether the Sonata's airbag system was negligently designed.[8] Second, it claims that the court should have instructed the jury that it could consider this evidence for the purpose of determining whether the negligently designed airbag system was a proximate cause of Eduardo's injuries.[9]

The appropriate use of seatbelt evidence in crashworthiness cases has been a source of much controversy. See Gen. Motors Corp. v. Wolhar, 686 A.2d 170, 173 (Del. 1996). For a long period, many courts refused to permit the introduction of evidence that a victim was not wearing a seatbelt in a product liability action. See 2 Madden & Owen, Prod. Liab., § 21:7 (3d

---

[7] The superseding cause defense allows a manufacturer to avoid liability by showing that a third person's negligence or misuse of the product was the sole proximate cause of the plaintiff's injury. See Reid v. Spadone Mach. Co., 404 A.2d 1094, 1099 (N.H. 1979).

[8] Hyundai also argues that this evidence was relevant to the defect prong of the strict liability count. Since the jury found for Hyundai on the strict liability count, any error in the instructions concerning this count is harmless.

[9] To prove negligence, the estate had the burden of showing that the negligent design was a proximate cause of Eduardo's injuries. See Trull, 761 A.2d at 482.

-14-

ed. 2000). Courts provided several reasons for this resistance: there is no duty to mitigate damages prior to sustaining an injury; a defendant must take the plaintiff as it finds him or her; there is no common law duty to wear a seatbelt; and seatbelt evidence leads to excessive speculation by experts (and thus protracted litigation). See Swajian v. Gen. Motors Corp., 559 A.2d 1041, 1043 (R.I. 1989).

State legislatures, in enacting mandatory seatbelt laws, further complicated this issue by including limitations on the introduction of seatbelt evidence in civil trials. For example, New Hampshire's seatbelt law contains such a limitation. See N.H. Rev. Stat. Ann. § 265:107-a IV. The statute requires minors to wear seatbelts but prohibits a defendant from proving comparative negligence through evidence that the plaintiff was not wearing his or her seatbelt.[10] Id. (stating that a "violation of [the child passenger restraint law] shall not be used as evidence of contributory negligence in any civil action."); see Forsberg v. Volkswagen of Am., Inc., 769 F. Supp. 33, 36 (D.N.H. 1990).

More recently, some courts have relaxed their skepticism

---

[10] Some other states provide even greater restrictions on the admission of seatbelt evidence, including preventing the admission of the failure to wear seatbelts "in any civil action." E.g., Conn. Gen. Stat. Ann. § 14-100a(c)(4). Other states permit the evidence of the plaintiff's failure to wear a seatbelt to mitigate damages, e.g., Fla. Stat. Ann. § 316.614(9), and yet other states leave the issue to the courts, e.g., N.J. Stat. Ann. § 39:3-76.2(h).

to the introduction of seatbelt evidence in product liability actions. See, e.g., Jimenez v. DaimlerChrysler Corp., 269 F.3d 439, 457 (4th Cir. 2001); Wolhar, 686 A.2d at 176-77. However, in deciding whether to admit seatbelt evidence, courts carefully adhere to the limitations placed on the use of this evidence by state legislatures. See, e.g., Rougeau v. Hyundai Motor Am., 805 So.2d 147, 157 (La. 2002); Ulm v. Ford Motor Co., 750 A.2d 981, 987-88 (Vt. 2000).

As discussed above, the New Hampshire seatbelt law prohibits the introduction of seatbelt evidence for the purpose of establishing the comparative negligence of the plaintiff. See N.H. Rev. Stat. Ann. § 265:107-a. It does not, however, prevent the admission of seatbelt evidence for other purposes. See id. Here, the district court permitted the jury to consider evidence that the Cabreras' Sonata was equipped with seatbelts in assessing the overall design of the airbag system. The court concluded, however, that whether Eduardo was actually wearing his seatbelt at the time of the accident was not relevant to the safety of the design. Thus, the court instructed the jury to ignore evidence that Eduardo was not wearing his seatbelt for the purpose of deciding whether the Sonata's airbag system was negligently designed.

The district court's analysis was correct. To find a negligent design, the jury had to conclude that Hyundai failed to

exercise "reasonable care in designing a vehicle for those uses which could be reasonably foreseen in order to avoid an unreasonable risk of injury to the occupant." In assessing Hyundai's care in designing the airbag system, the jury could consider the Sonata's overall airbag system design and not merely the design of the airbag which struck Eduardo. See, e.g., Jimenez, 269 F.3d at 459; Wolhar, 686 A.2d at 175; Lowe v. Estate Motors Ltd., 410 N.W.2d 706, 719-20 (Mich. 1987). Thus, as the district court concluded, the presence of safety devices in addition to the airbags (e.g., seatbelts) could be relevant to the jury's determination of whether the Sonata's airbag system was negligently designed. Id.

But while the presence of seatbelts in the Sonata was potentially relevant to the negligent design issue, whether Eduardo actually was wearing his seatbelt during the accident was not. The point at which the jury was to determine whether Hyundai negligently designed the airbag system was the date when Hyundai sold the Sonata to the Cabreras in the summer of 1995. See Trull, 761 A.2d at 481; Chellman v. Saab-Scania AB, 637 A.2d 148, 150 (N.H. 1993). Obviously, Eduardo's conduct on the day of the accident, over a year after the Cabreras bought the Sonata, was irrelevant to this determination. In short, Eduardo's "conduct and its causal relation to [his] injuries [was] not relevant to the issue of the vehicle's design." Lowe, 410 N.W.2d at 720; see

-17-

DePaepe v. Gen. Motors Corp., 33 F.3d 737, 746 (7th Cir. 1994) ("On retrial the district court should again permit [General Motors] to show that [plaintiff's car] was equipped with a functional restraint system and should again instruct the jury of the limited purpose of that evidence."); Hermann v. Gen. Motors Corp., 720 F.2d 414, 415 (5th Cir. 1983) (holding that jury was properly instructed that it could consider the "availability of seat belts" in assessing "dangerousness" of car); LaHue v. Gen. Motors Corp., 716 F. Supp. 407, 418 (W.D. Mo. 1989)("the defendants . . . should be permitted to introduce evidence concerning whether seat belts were available and operable"); Jordan v. Gen. Motors Corp., 624 F. Supp. 72, 75 (E.D. La. 1985) (holding that plaintiff may introduce evidence on the "availability of seat belts" in determining whether the car, as designed, was unreasonably dangerous); Wolhar, 686 A.2d at 176 (concluding that presence of seatbelts is relevant to showing the vehicle's over-all safety design); Whitehead v. Am. Motors Sales Corp., 801 P.2d 920, 928 (Utah 1990) (concluding that "presence" of seatbelts in vehicle was relevant in assessing design).

Hyundai also argues that the district court's limiting instruction was erroneous because the jury could have relied on evidence that Eduardo was not wearing his seatbelt to conclude that the negligent design was not the proximate cause of Eduardo's

-18-

injuries.[11]  Hyundai failed to properly preserve this argument.

Under Fed. R. Civ. P. 51, a party wishing to object to an instruction must raise the objection "before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."  Our interpretation of Rule 51 is quite strict.  See Gray v. Genlyte Group, Inc., 289 F.3d 128, 134 (1st Cir. 2002), cert. denied, 537 U.S. 1001 (2002).  It is well-settled in this Circuit that "[e]ven if the initial request for an instruction is made in detail, the requesting party must object again after the instructions are given but before the jury retires for deliberations."  Foley v. Commonwealth Elec. Co., 312 F.3d 517, 521 (1st Cir. 2002); see Gray, 289 F.3d at 134; Smith v. Mass. Inst. of Tech., 877 F.2d 1106, 1109 (1st Cir. 1989).  It is also well-settled "that an objection on one ground does not preserve appellate review of a different ground."  Negron v. Caleb Brett U.S.A., Inc., 212 F.3d 666, 672 (1st Cir. 2000); see Cambridge Plating Co. v. Napco, Inc., 85 F.3d 752, 766 (1st Cir. 1996).

Prior to trial, Hyundai requested an instruction informing the jury, inter alia, that it could consider the evidence that Eduardo was not wearing his seatbelt "[i]n deciding

---

[11]  Hyundai claimed that because Eduardo was not wearing his seatbelt and sitting too close to the airbag at the time of the accident, any airbag (no matter its aggressiveness) would have killed him.  Therefore the defect in the airbag system was not the proximate cause of his death.

whether the allegedly defective airbag was the proximate cause of [his] death." The district court refused to give this instruction and instead instructed the jury that it could only consider the evidence that Eduardo was not wearing his seatbelt on the issue of superseding cause. After the court instructed the jury and before the jury retired to deliberate, Hyundai objected to this instruction. However, at that time, Hyundai objected only on the ground that the jury should have been instructed that evidence of Eduardo's failure to wear his seatbelt could be considered in deciding if the Sonata's design was crashworthy.[12] This was not sufficient.[13]

---

[12] Hyundai's objection to the district court's limiting instruction was, in pertinent part, as follows:

> [W]e object and preserve our exception and ask you to charge the jury regarding the crashworthiness claim so that the jury is instructed that they may consider the seatbelt evidence in the context of the crashworthiness claim, and we have as you know repeatedly asked the Court to provide the jury with a further instruction that in the context of the overwhelming evidence in this case, that the system is an integrative system and that it must be considered with all its component parts; that the failure by the parents in this case to use the product properly by using the seatbelt should be considered in the context of determining the crashworthiness of the vehicle . . . Certainly the vast majority of jurisdictions we believe would allow the introduction of seatbelt evidence in a product case where you are providing it for purposes other than of comparative fault or damage mitigation, and particularly where it is part of the underlying system, and I would again just briefly mention the [Rougeau v. Hyundai case]. That was in Louisiana. Also Gardner v. Chrysler.

[13] In support of this conclusion, we note that Hyundai cited Rougeau v. Hyundai Motors Am., 805 So.2d 147 (La. 2002) and Gardner

-20-

When an objection to a jury instruction is forfeited, we apply the plain error standard. See Gray, 289 F.3d at 134. To obtain relief under this standard, the party claiming error must show (1) an error, (2) that is plain (i.e., obvious and clear under current law) (3) that is likely to alter the outcome, and (4) that is sufficiently fundamental to threaten the fairness or integrity or public reputation of the judicial process. See Babcock, 299 F.3d at 65. Plain error is reserved for only "the most egregious circumstances." See Moore v. Murphy, 47 F.3d 8, 11 (1st Cir. 1995). Such egregious circumstances do not exist here.

Hyundai has a plausible argument that the district court should have instructed the jury to consider the evidence that Eduardo was not wearing his seatbelt on the issue of proximate cause. Indeed, some courts have so held. See MacDonald v. Gen. Motors Corp., 784 F. Supp. 486, 499 (M.D. Tenn. 1992); LaHue, 716 F. Supp. at 416; Wolhar, 686 A.2d at 176-77. However, there is also substantial contrary authority.[14]    See    Milbrand    v.

_____

v. Chrysler, 89 F.3d 729 (10th Cir. 1996) to the district court as the primary bases for its objection. Both of these cases dealt with the admission of seatbelt evidence to prove negligent or defective design. Gardner, 89 F.3d at 737; Rougeau, 805 So.2d at 157. Neither case supports the position pressed by Hyundai here-- that evidence showing that Eduardo was not wearing his seatbelt should be admitted on the issue of causation.

[14] Neither this Court nor the New Hampshire Supreme Court has addressed the issue.

-21-

DaimlerChrysler Corp., 105 F. Supp. 2d 601, 606 (E.D. Tex. 2000); Rougeau, 805 So.2d at 157; Swajian, 559 A.2d at 1046; Lowe, 410 N.W.2d at 720-21; Horn v. Gen. Motors Corp., 551 P.2d 398, 404 (Ca. 1976). As one treatise recently stated, "the appropriateness of evidence of seat belt non-use (as opposed to availability) raises difficult issues apart from the defectiveness vel non of a vehicle's design, and the propriety of such evidence is not so clear." 2 Madden & Owen at § 21:7 (emphasis and parenthesis in original). In a similar vein, one court observed:

> Enough has been written about the "seatbelt defense" to show the body of law related to it is split, fragmented and changing. It varies in time, place, rationale, effect and implementation. No doubt the law varies so much because the theory does not fit neatly into traditional tort doctrines of negligence (including duty, breach of duty and causation), strict liability, contributory negligence, mitigation of damages, avoidance of consequences, and comparative fault."

LaHue, 716 F. Supp. at 410 (internal citations omitted) (parenthesis in original). As should be evident, the most that can be said on this issue is that the law is unsettled. See United States v. Marino, 277 F.3d 11, 32 (1st Cir. 2002) (concluding that there cannot be plain error where the law is unsettled), cert. denied, 536 U.S. 948 (2002). Thus, to the extent that the district court erred by failing to instruct the jury to consider evidence that Eduardo was not wearing his

-22-

seatbelt on the proximate cause issue, the error was not so "obvious or clear under current law" that it can be considered a plain error. Babcock, 299 F.3d at 65.

### C. Evidence of Seatbelt Law Citations

Finally, Hyundai challenges the district court's decision to exclude evidence that Mr. Cabrera had been cited on two previous occasions for driving his car without fastening Eduardo's seatbelt in violation of the New Hampshire seatbelt law. We review a district court's decision to exclude evidence for an abuse of discretion. See Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 98 (1st Cir. 1997).

Hyundai claims that evidence of the citations was relevant to whether Mr. Cabrera operated the Sonata in a reasonably foreseeable manner at the time of the accident. See Reid, 404 A.2d at 1099 (stating that to prove superseding cause defendant must show that third party used product in manner unforeseeable to manufacturer). The primary evidence on the foreseeability issue was the evidence of Mr. Cabrera's supposed misuse of the Sonata on the date of the accident (i.e., operating the Sonata without fastening Eduardo's seatbelt). In addition, evidence showing that states have enacted mandatory seatbelt laws could be relevant to the foreseeability issue because the jury conceivably could factor the existence of this legal duty into its determination whether Hyundai could foresee a parent operating an

-23-

automobile without fastening a child's seatbelt.[15]  Cf. Bexiga v. Havir Mfg. Corp., 290 A.2d 281, 286 (N.J. 1972) (stating that existence of statute concerning appropriate use of product was relevant but not dispositive to whether use of product in violation of statute was reasonably foreseeable to manufacturer).

Hyundai, however, does not challenge the district court's refusal to admit the existence of state seatbelt laws.  See supra, at p. 23 n.15.  Rather, it challenges the district court's refusal to admit evidence that Mr. Cabrera had received two citations for violating the seatbelt law.  We fail to see how evidence of the citations could demonstrate that Mr. Cabrera's use of the Sonata on the date of the accident was unforeseeable to Hyundai.  This information was not available to Hyundai when it sold the Sonata to the Cabreras.  See 72 C.J.S. Supp., Prods. Liab. § 31 n.93 (1975) (stating that only information available to the seller at the time of the sale is relevant in determining reasonably foreseeable uses of product).  Evidence that Mr. Cabrera had been cited for failing to seatbelt Eduardo on two prior occasions suggests only that he likely failed to seatbelt Eduardo on the date of the accident.  But use of Mr. Cabrera's prior acts for this purpose is prohibited by Fed. R. Evid. 404(b).

---

[15] Hyundai sought to introduce evidence showing the existence of mandatory seatbelt laws, but the district court excluded this evidence as more prejudicial than probative.  See Fed. R. Evid. 403.

See Lataille v. Ponte, 754 F.2d 33, 35 (1st Cir. 1985) ("It is well settled that prior acts may not be admitted to prove that a person acted in a similar fashion in the case at hand.").[16]

Hyundai argues alternatively that even if the evidence of the citations was not admissible to show foreseeability, it was admissible to impeach Mr. Cabrera's trial testimony. On cross-examination, Mr. Cabrera testified that he did not remember a police officer advising him, for safety reasons, that Eduardo had to be wearing his seatbelt when the car was moving. In response to this answer, Hyundai sought to impeach Mr. Cabrera's testimony by questioning him about the two citations. The district court forbade Hyundai from questioning Mr. Cabrera about the citations but did permit it to impeach him with his deposition in which he acknowledged that a police officer had told him that his son had to be wearing a seatbelt while he was driving.

"When a witness's credibility is at issue, the trial court may limit cross-examination as long as the court allows sufficient leeway to establish a reasonably complete picture of the witness's veracity, bias and motivation." United States v. Gonzalez-Vazquez, 219 F.3d 37, 45 (1st Cir. 2000) (internal quotations omitted). Here, the district court chose to permit

---

[16] Fed. R. Evid. 404(b) permits the admission of prior acts for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. None of these reasons for admitting the citations is present here.

Hyundai to impeach Mr. Cabrera by confronting him with a prior inconsistent statement from his deposition rather than by allowing it to inquire about the citations.  Such a determination was well within the district court's considerable discretion to exclude evidence as overly prejudicial.  See Ferrara & DiMercurio v. St. Paul Mercury Ins. Co., 240 F.3d 1, 6 (1st Cir. 2001).  The district court reasonably concluded that presenting the prior inconsistent statement sufficiently impeached Mr. Cabrera's veracity and that presenting the evidence concerning the citations would have been overly prejudicial to the estate's case.  See Fed. R. Evid. 403.

## III. Conclusion

For the reasons stated above, we **affirm** the judgment in favor of the Estate of Eduardo Cabrera.