PEARL INVESTMENTS, LLC, Plaintiff

v.

STANDARD I/O, INC. and Jesse Chunn, Defendants

Jesse Chunn, Third–Party Plaintiff

v.

Dennis Daudelin, Third–Party Defendant

No. CIV.02–50–P–H.

United States District Court, D. Maine.

April 20, 2004.

See also 297 F.Supp.2d 335.

**44**

Todd S. Holbrook, John G. Osborn, Bernstein, Shur, Sawyer, & Nelson, Portland, for Pearl Investments, LLC, Plaintiff and Counterclaim Defendant.

Robert H. Stier, Pierce, Atwood, Portland, for Standard I/O Inc., Defendant and Counterclaimant.

## ORDER ON DEFENDANT CHUNN'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL

HORNBY, District Judge.

This motion presents the issue whether the plaintiff's damage awards on two counts are supported by the evidence, or whether they are precluded by a favorable verdict and ruling on one other count. I conclude that the damage awards survive the arguable inconsistencies, and that the evidence supports them.

### I. FACTS

Pearl Investments, LLC ("Pearl") commissioned Jesse Chunn ("Chunn") to write software to permit Pearl to run an automated stock trading system.[1] Before the Pearl contract, Chunn knew nothing about automated trading. Once Pearl's system became operational, Pearl operated it through the black box network of a third party, On Site. At some point, Pearl and Chunn parted ways and Pearl discovered that, without its knowledge, Chunn had attached his own server to the On Site black box network to run a different automated trading system ("Scalper") that Chunn claimed to have developed on his own time. Pearl asserted that Chunn's development and use of Scalper breached a nondisclosure agreement between the

---

1. Chunn is founder, owner and president of Standard I/O, Inc. The jury found that Standard I/O, Inc. did not violate the nondisclosure agreement.

parties, violated Maine's trade secret misappropriation law, and violated the Digital Millennium Copyright Act ("DMCA"). Pearl also claimed that defects in Chunn's software breached warranties. At the end of the plaintiff's case, I granted Chunn judgment as a matter of law on the breach of warranty claim. The jury found for Pearl on the breach of contract and the misappropriation claims, but found for Chunn on the DMCA claim. It awarded a total of $54,000, recoverable on either count.[2] Chunn now seeks judgment as a matter of law on two grounds.

First, Chunn argues that Pearl's only evidence of damage derived from either Chunn's installation of his server on Pearl's On–Site black box network or problems with Chunn's software. Chunn says that both these claims are now gone from the case, Def. Chunn's Renewed Mot. at 1 (Docket Item 143), and that the damage awards are therefore unsustainable. The server installation claim disappeared, he argues, with the jury verdict in his favor on the DMCA claim; the defective software claim disappeared upon entry of judgment as a matter of law on the breach of warranty claim at the close of the plaintiff's case.

Second, Chunn argues that Pearl presented no evidence of actual damages flowing from Chunn's use of the Scalper automated trading program. (The parties seem to agree that Chunn's use of Scalper is at the root of both verdicts favorable to Pearl: the breach of contract verdict (the nondisclosure agreement) and the misappropriation of trade secret verdict.)

Alternatively, Chunn seeks a new trial on damages.

**2.** The parties stipulated to award Chunn $1.000 on a third-party claim against Dennis

## II. ANALYSIS

### A. Effect of Chunn's Victory on Breach of Warranty and DMCA

All the evidence about damages came from the testimony of Dennis Daudelin. He described bugs and slowdowns in the Pearl system's operation, and the time, energy and expenses devoted to trying to fix the problems. One explanation of the problems was defective software written by Chunn for Pearl; another was the unknown (at the time) interference and congestion from Chunn's simultaneous operation of his own automated trading program on the same black box network that Pearl used. But Chunn argues that the verdict of no liability on the DMCA claim and the disappearance of the breach of warranty count "removed any liability against Mr. Chunn based upon" these activities. Def. Chunn's Renewed Mot. at 1. Certainly no issue went to the jury concerning Chunn software errors. The real issue between the parties on this point, then, is the effect of the DMCA verdict in Chunn's favor.

Verdicts in civil cases need not be perfectly consistent. "Inconsistent jury verdicts upon different counts or claims are not an anomaly in the law, which at times recognizes a jury's right to an idiosyncratic position provided the challenged verdict is based on the evidence and the law." *Merchant v. Ruhle*, 740 F.2d 86, 90 (1st Cir.1984) (citations omitted). The First Circuit subscribes "to a substantial reluctance to consider inconsistency in civil jury verdicts a basis for new trials." *Id.* at 91. Before disregarding a verdict and awarding a new trial, I "must attempt to reconcile the jury's findings." *See Connelly v. Hyundai Motor Co.*, 351 F.3d 535, 540 (1st Cir.2003) (citations omitted).

Daudelin, president of Pearl, for conversion of the Chunn server.

■ The DMCA is a relatively new statute, effective since October 28, 2000.[3] Neither I nor the lawyers were able to find much to assist us in explaining its terms to the jury. With the agreement of both Chunn and Pearl, I instructed the jury:

[t]his federal statute prohibits circumventing a technological measure that effectively controls access to a copyrighted work. A technological measure "effectively controls access to a work" if the measure, in the ordinary course of its operation, requires application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work. To "circumvent a technological measure" means avoid bypass, remove, deactivate or impair a technological measure without the authority of the copyright owner.

Court Jury Instructions (Docket Item 129). Applying this instruction, the jury could have concluded that Pearl did not prove that Chunn's hookup of his server to Pearl's automated trading system on the same network "circumvent[ed] a technological measure" as that phrase is defined, yet still conclude that Chunn's hookup disrupted, congested and impaired the Pearl system. Indeed, it is apparent that the jury struggled with the DMCA instruction (which in hindsight was fairly abstruse). During deliberations, it sent out the following note: "Would you please clarify which actions of Jesse Chunn are supposed to have violated the DMCA?" Court Ex. 3. Chunn resisted satisfying the jury's inquiry, and I sent back the following unhelpful response: "Now that the evidence is closed, I am no longer in a position to advise you what the respective parties' claims are. You must base your decision upon the evidence that was presented, the closing arguments you heard and my in-structions on the law." Court Ex. 4. It is hardly surprising that, although it awarded damages for misappropriation and the breach of the nondisclosure agreement, the jury found that Pearl did not prove that Chunn's conduct violated the DMCA.

I conclude that the DMCA verdict is not inconsistent with the jury's conclusion that Chunn's physical hookup to the Pearl system caused damage to Pearl.

### B. Evidence for Damages Resulting from Misappropriation or Breach of Contract

The jury found that Chunn's creation and use of Scalper misappropriated a trade secret and violated the nondisclosure agreement. It awarded $54,000 as damages. The only evidence of damages, however, was impairment to the Pearl automated trading system (e.g., slower processing, congestion, etc.) through Chunn's physical connection. The jury could reasonably find that Chunn was using software containing misappropriated trade secrets in the activity he conducted through the connection, and that Pearl spent significant funds trying to cure its system's slow-down, believing incorrectly that software bugs were slowing the processing speed. Chunn maintains that there is a distinction between misappropriation of the trade secret and breach of the nondisclosure agreement, on the one hand, and surreptitiously hooking up the Chunn system to the Pearl system, on the other hand. He says that the congestion damages flow only from the latter. But does the misappropriation or breach make Chunn liable for these damages nonetheless?

### (1) Trade Secret Misappropriation

■ According to the Maine statute, an individual whose trade secret has been

---

3. President Clinton signed the DMCA into law on October 28, 1998, but the Act did not take effect until two years later. See 17 U.S.C. § 1201(a)(1)(A) (Supp.2003).

misappropriated is entitled to recover "the actual loss caused by the misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." 10 M.R.S.A. § 1544(1) (1997). If these measures are unavailable, a reasonable royalty may be awarded. *Id.* No evidence regarding the license or royalty value of the Scalper trade secret or suggesting that Chunn profited from his misappropriation was produced at trial.[4] In the absence of such royalty or unjust enrichment evidence, the only possible damages are those resulting from the Pearl system's impairment and congestion. Did the trade secret misappropriation "cause" these damages?

Chunn argues that he could have misappropriated the trade secret, Scalper, but used it by hooking up to another network, thereby not causing the congestion damages to Pearl. Reply Mem. at 3 (Docket Item 149). Had he done so, he says, there would have been misappropriation without congestion damages. Hence, he argues, it was not the theft that caused Pearl's damages.[5] That is too crabbed a reading of the Maine statute. Misappropriation includes "use" of a trade secret. 10 M.R.S.A. § 1542. Chunn made the decision how to use his stolen trade secret, and he used it to Pearl's detriment. I conclude that the jury reasonably could find that Chunn's misappropriation caused Pearl's congestion-related damages.

4. There is evidence of the number of hours Chunn worked to create Scalper, and the amount of time and money it took to develop the Pearl system. However, it would be difficult to convert the value of Scalper based on development costs into a measurement of lost value for use of the trade secret through the involuntary license that results from misappropriation.

5. The Maine statute does not further define causation. Several other courts applying the

Chunn also claims that the damage award is excessive. A damage award will be reduced or a new trial on damages will be granted only when the award exceeds any rational estimate of damages based on the evidence before the jury. *See Wortley v. Camplin,* 333 F.3d 284, 297 (1st Cir.2003) (citations omitted); *Blinzler v. Marriott Int'l, Inc.,* 81 F.3d 1148, 1161 (1st Cir.1996) (citations omitted). The jury's damage award of $54,000 does not exceed any rational estimate that could be based on the evidence. As I have stated, Pearl introduced evidence at trial that it lost significant funds during the time Chunn operated his own trading system, and that it spent numerous resources to improve the performance of its own system while Chunn's system was running on the same network.

For the foregoing reasons, I **DENY** the motion for judgment as a matter of law and for new trial on the jury damage award of $54,000 on the trade secret misappropriation count.

### (2) The Nondisclosure Agreement

The same analysis applies here, as to the misappropriation claim. I will not repeat it.

### III. CONCLUSION

The defendant Chunn's renewed motion for judgment as a matter of law to reject

same law (the Uniform Trade Secrets Act) have used the standard of proximate cause. *See, e.g., World Wide Prosthetic Supply, Inc. v. Mikulsky,* 251 Wis.2d 45, 640 N.W.2d 764, 769–70 (2002); *Fred's Stores of Miss., Inc. v. M & H Drugs, Inc.,* 725 So.2d 902, 912 (Miss. 1998); *Total Care Physicians, P.A. v. O'Hara,* 2003 WL 21733023, *2, 2003 Del.Super. LEXIS 261, *4. That standard is satisfied here, with both cause-in-fact and foreseeability.

the jury damage award or in the alternative for a new trial is DENIED.

So ORDERED.