# United States Court of Appeals

## For the First Circuit

Nos. 09-2341
    09-2342
    09-2343

TING JI,

Plaintiff, Appellant/Cross-Appellee,

v.

BOSE CORPORATION,

Defendant/Third-Party Plaintiff,
Appellee/Cross-Appellant/Third-Party Cross-Appellee,

WHITE/PACKERT, INC.,

Defendant/Third-Party Defendant,
Appellee/Third-Party Cross-Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

David K. Friedland, with whom Jaime Rich Vining, Lott &
Friedland, P.A., Michael J. Schlesinger, Michael L. Cotzen and
Schlesinger & Cotzen, P.L. were on brief, for appellant/cross-
appellee.
Gregory A. Madera, with whom Amy L. Brosius, Stephen A.
Marshall and Fish & Richardson P.C. were on brief, for Bose
Corporation.
Mark D. Robins, with whom Michael R. Scott and Nixon Peabody
LLP, were on brief, for White/Packert, Inc.

November 23, 2010

HOWARD, Circuit Judge. These three consolidated appeals arise out of the improper use of a model's image to package and promote a home entertainment system. The model, plaintiff Ting Ji (Ji), although successful at trial as to liability, insists that a new trial as to damages is necessary to cure the district court's purported errors in refusing to compel discovery and instructing the jury. The maker of the entertainment system, defendant Bose Corporation (Bose), and Ji's photographer, defendant White/Packert, Inc. (White), contest other rulings of the district court in their respective cross-appeals.

After careful review, we affirm in all respects.

I. BACKGROUND

In 2004, Ji participated in a photo shoot for which she was paid $1,000. On the same day, she signed two documents in connection with the shoot. The first was her modeling agency's voucher (Voucher) that confirmed her attendance at the shoot and entitled her to payment. The Voucher included a release assigning limited use of Ji's photos; among other things, the release prohibited the use of images for "packages, point of purchase, [and] displays." The second instrument that Ji signed was White's adult release (Release), which included a broad release that assigned the "absolute right and permission to . . . use" Ji's images "for any purpose whatsoever."

-3-

Thinking that it had secured a "total buy-out" of Ji's images based on the Release, White conveyed the images to Bose. Bose selected one of those images for the packaging of its 3·2·1® Series II DVD Home Entertainment System (the 321 System) and related promotional media. The image Bose selected featured the 321 System with Ji partially embracing a male model as they watched television from a couch. The photo was taken from behind the couch, exposing the back of Ji's head and little of her face; as a result, Ji is barely recognizable. Bose placed the image on the upper right-hand corner of each side of the 321 System's packaging.

After Ji discovered her image while perusing a Best Buy store, she sued Bose in federal district court in Florida. She asserted a false endorsement claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), a right-to-publicity claim under Florida Statutes § 540.08, and a common-law claim for invasion of privacy. Bose successfully moved to transfer the case to federal district court in Massachusetts, where it is based. Ji amended her complaint to assert an additional claim for unfair trade practices under Mass. Gen. Laws ch. 93A.[1] She also added White as a defendant. Bose then filed cross-claims against White for breach of contract, misrepresentation, indemnification, and contribution.

---

[1]The district court issued a posttrial order finding no violation of Chapter 93A as to either Bose or White. Ji has not appealed that ruling.

-4-

During discovery, Ji sought financial information from Bose, including sales data concerning its 321 System, on the ground that she needed that information to prove damages under the Lanham Act. Bose objected because, as a private company, its financial information, and particularly information concerning its sales, was sensitive and closely guarded. Bose also argued that discovery concerning such information should await the district court's ruling on Bose's pending and potentially dispositive motion for partial summary judgment on Ji's Lanham Act claim. The district court agreed and postponed discovery.

The court eventually granted Bose's partial summary judgment motion and dismissed Ji's Lanham Act claim. Of the factors that courts have found necessary to prove false endorsement under the Lanham Act, the district court concluded that Ji could at best prove two and that six leaned decidedly in Bose's favor. See Downing v. Abercrombie & Fitch, 265 F.3d 994, 1007-08 (9th Cir. 2001) (listing factors in false endorsement case). Of critical importance to the district court, Ji did not show, nor could the court credibly infer, that her identity (or "mark," in trademark parlance) was familiar to Bose's target audience.

Despite this setback, and the specter that her extant discovery requests would be fruitless, Ji again moved to compel production of Bose's financial information. This time Ji argued that she still needed that information in order to prove damages on

her right-to-publicity claim because Florida law entitled her, if successful, to a "reasonable royalty." Fla. Stat. § 540.08. The district court initially denied the motion. On further reflection, however, the court granted it in part and ordered Bose to produce information "sufficient for [Ji] to inform the jury of the extent of [Bose's] use" of her image:

> This Court has previously ruled that the "reasonable royalty" language in Fla. Stat. § 540.08 provides for recovery of compensatory damages which does not implicate the net worth of the defendant. Nevertheless, the plaintiff may reasonably argue that her fair compensation, should she prove a violation of the statute, ought to depend, to some degree, upon Bose's usage of her image.

> Bose will, therefore, produce to Ji . . . information sufficient for her to inform the jury of the extent of its use of the subject photographs. Such information includes, to the extent that it is available, 1) the number of unit boxes on which her image appeared, 2) the number of point-of-purchase displays that were produced in the years in which her image was in use and 3) the number of promotional CD-ROMs that were distributed in the advertisement of the [321 System]. Bose will not be required to produce sales figures with respect to its [321 System] unless no other metric, such as those indicated in the preceding sentence, is ascertainable.

After the close of discovery, Bose and White moved for summary judgment on Ji's Florida claims. They asserted, and Ji agreed, that her Florida claims "hinged on" a question of contract interpretation: whether the Voucher or the Release controlled Bose's rights with respect to the images of Ji taken by White. Bose and White argued that the Release controlled because the Voucher left essential terms blank and was therefore unenforceable.

-6-

Ji countered that the absence of some terms in the Voucher did not invalidate it. According to Ji, the Voucher controlled because it was executed earlier in time. At the very least, Ji argued, the question was more appropriate for the jury because it involved competing accounts of the parties' intentions. Viewing both contracts together, the district court concluded that it was unclear from the plain language which controlled the dispute. Because the parties submitted conflicting extrinsic evidence, and had retained expert witnesses in part to opine on this precise question, the district court denied summary judgment.

The case proceeded to trial. After four days of argument and testimony, the jury found that Bose violated Ji's publicity and privacy rights under Florida law but awarded her only $10,000 (a fraction of her $2 million demand).[2] The jury also found that White was liable to Bose for the award.

---

[2]The first question on the verdict form asked the jury whether Bose violated Ji's publicity or privacy rights under Florida law and required a yes-or-no answer. The jury foreman checked the "yes" box. The second question asked the jury to enter an amount of damages proved as a result of Bose's violation of Ji's right to publicity or its invasion of her privacy or both. The jury foreman wrote "$10,000."

Based on the verdict form's use of the disjunctive, it is possible that the jury determined that there was no violation of Fla. Stat. § 540.08, and awarded damages on Ji's common-law privacy claim only. Whether this possibility impacts our review of the measure of damages available under § 540.08 is an issue that the parties do not address. Because the parties agreed below that both claims turned on the same question (whether Ji consented to the use of her images), and because we will never know the exact basis of the jury's determination, we proceed to address the parties' dispute anyway.

After judgment entered, Bose moved for attorneys' fees on Ji's unsuccessful false endorsement claim under an express provision in the Lanham Act, 15 U.S.C. § 1117(a) ("[t]he Court in exceptional cases may award reasonable attorneys' fees to the prevailing party"), and as a sanction for "vexatious" litigation under 28 U.S.C. § 1927 (providing for attorneys' fees in cases where an attorney "unreasonably and vexatiously . . . multiples the proceedings in any case"). The district court denied the motion on the ground that Ji's false endorsement claim, while meritless, failed to satisfy the high standards under either statute for the imposition of attorneys' fees.

All parties appealed.

## II.  DISCUSSION

These appeals raise three main issues.

### A.  Measure of Damages under Florida Statutes § 540.08

Ji's principal grievance is that the district court fundamentally misunderstood the measure of damages under § 540.08 as compensatory rather than royalty based. Had the court correctly understood the law, Ji argues, it should have compelled Bose to produce sales data (number of units sold, revenues, profits), rather than mere usage data (number of units on which Ji's image appeared). Ji contends that without sales data the jury could not calculate a percentage of sales, and therefore could not determine a reasonable royalty. Ji also argues that the court's omission of

-8-

her proposed royalty-based damages instruction was erroneous. Even if the jury had the benefit of sales data, Ji postulates, it still could not have determined a reasonable royalty because the court's charge restricted any award to compensatory damages. According to Ji, these errors require a new trial on damages.[3]

We disagree. In doing so, we need not prophesy whether the Florida Supreme Court would characterize damages under § 540.08 as compensatory or something else. Instead, we take each of Ji's two arguments on their own terms and reject them.

### 1.     **Motion to Compel**

"Discovery orders ordinarily are reviewed for abuse of discretion." Cusumano v. Microsoft Corp., 162 F.3d 708, 713 (1st Cir. 1998). This standard is "not appellant-friendly," and we will not intervene without a "clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." Dennis v. Osram Sylvania, Inc., 549 F.3d 851, 860 (1st Cir. 2008) (quoting Modern Cont'l/Obayashi v. Occupational Safety & Health Review Comm'n, 196 F.3d 274, 281 (1st Cir. 1999)) (internal quotation marks omitted). "A decision may be plainly wrong if it is based on an incorrect legal standard or a misapplication of the law." In re Subpoena to Witzel, 531 F.3d 113, 117 (1st Cir. 2008).

---

[3]Notably, Ji does not argue on appeal that the jury's $10,000 damages award was unsupported by the evidence.

Section 540.08 of the Florida Statutes provides:

> The person whose likeness is used . . . may bring an action to enjoin such unauthorized publication, printing, display or other public use, and to recover damages for any loss of injury sustained by reason thereof, including an amount which would have been a reasonable royalty, and punitive or exemplary damages.

Fla. Stat. § 540.08(2). The statute does not define a reasonable royalty, or suggest what data is necessary to calculate what one might be in any particular set of facts. No opinion of the Florida Supreme Court, or of Florida's lower appellate courts, does either.

Ji's argument that sales data are necessary to determine damages under § 540.08 is based on (1) an unpublished decision of a Florida federal district court, Jackson v. Grupo Indus. Hotelero, SA, No. 07-22046, 2009 U.S. Dist. LEXIS 116770 (S.D. Fla. Apr. 29, 2009),[4] and (2) an analogy to patent law. Neither shows that the district court abused its discretion when it ordered Bose to produce usage data in lieu of sales data.

In Jackson, following a bench trial, the district court found that the Coco Bongo nightclub violated § 540.08 by misappropriating the likeness of well-known entertainer Curtis Jackson (a/k/a "50 Cent") and his mark "G-Unit" (short for "Guerilla Unit," the nom de guerre of Jackson's hip-hop group). Id. at *25. As for damages under the statute, the district court

---

[4]Of course, decisions of federal trial courts interpreting state law are not binding on state courts (or on federal appellate courts attempting to divine how a state court might rule).

observed that the "reasonable royalty measure of damages is taken to mean more than simply a percentage of actual profits. The measure now, very simply, means the actual _value_ of what has been appropriated." Id. at *30-31 (emphasis supplied) (quoting University Computing Co. v. Lykes-Youngstown Corp., 504 F.2d 518, 537 (5th Cir. 1974)). To ascertain what that "value" was, the district court turned to basic principles of Florida's law of damages: "The fundamental principle of the law of damages is that the person injured . . . shall have fair and just compensation commensurate with the loss sustained in consequence of the defendant's act which gives rise to the action." Id. at *35-36 (quoting MCI WorldCom Network Servs. v. Mastec, Inc., 995 So. 2d 221, 224 (Fla. 2008)). Framework in place, the district court determined that a lump-sum payment of $200,000 was a reasonable royalty for Coco Bongo's misappropriation. Id. at *36.

Ji argues that the district court's $200,000 award in Jackson was "based on $4,654,846 in sales -- a 4.3% royalty rate." Not true. Nowhere in its analysis of damages under § 540.08 did the district court mention, let alone consider, Coco Bongo's sales. See id. at 35-42. It only did so in calculating damages on Jackson's successful Lanham Act claim. Id. at 42 ("[Jackson] is entitled to an award of profits for the infringing use of his trademark only. Compare 15 U.S.C. 1117, with Section 540.08, Fla.

Stat.") (first emphasis supplied). Here, unlike in Jackson, Ji's Lanham Act claim was dismissed on summary judgment.

For similar reasons, Ji's reliance on the court's statement in Jackson, quoted above, that a reasonable royalty means "more than simply a percentage of actual profits," is mistaken. Id. at *30 (quoting University Computing, 504 F.2d at 537). "Judges expect their pronunciamentos to be read in context." In re Olympic Mills, 477 F.3d 1, 11 (1st Cir. 2007) (quoting Wisehart v. Davis, 408 F.3d 321, 326 (7th Cir. 2005)) (internal quotation marks and alternation omitted). The fallacy in Ji's argument is readily apparent. If the court in Jackson meant that profits were a component of a reasonable royalty, then why did it disregard Coco Bongo's profits (which were in the record) when it determined damages under § 540.08? Ji offers no reasonable explanation for this discrepancy.

Ji's analogy to patent law measures of damages suffers a similar, but much quicker, fate. Whatever the variety of approaches under patent law, see, e.g., University Computing, 504 F.2d at 536-39, the language of the federal statute is different and there is no basis to assume that § 540.08 was meant to have the same meaning.

All in all, it is enough that Ji has failed to submit reliable indicia that the Florida Supreme Court would consider sales data as necessary components of a reasonable royalty under §

-12-

540.08.  Accordingly, the district court did not abuse its discretion in compelling Bose to produce usage data instead.

If we had any doubts about this conclusion (we do not), Ji's failure to show prejudice resulting from the district court's order would remove them.  As discussed, the district court ordered Bose to tell Ji the "number of unit boxes on which her image appeared."  Bose thereafter told Ji, via a supplemental interrogatory response, that Ji's image appeared on approximately 206,000 units of the 321 System.  Based on that data point, and record evidence that the 321 System sold for $999 per unit, Ji's expert witness, Richard Wolfe, an attorney specializing in entertainment law, was able to extrapolate that Bose's gross revenues from the 321 System were as high as about $206 million. Applying a rate of between a half percent and one percent of that figure, Wolfe testified at trial that in his opinion a reasonable "usage fee" (which he equated with a "royalty") would be between $1 million and $2 million.[5]  At closing, Ji's counsel, specifically

_____

[5]Because Ji hotly contests this point, we provide excerpts from Wolfe's trial testimony:

[**Ji's Counsel:**]  [B]ased on your experience with these different types of usages, can you describe for us the different types of compensation that you have seen models receive for these different usages?

[**Wolfe:**]  Sure.  And, again, it ranges the gamut, and it also depends upon the stature of the model and it depends upon the intended use by the ultimate user. . . . [W]here the image is going to be used for a commercial purpose . . . we're typically going to negotiate for a flat fee for

referencing Wolfe's testimony, argued that the jury should award Ji a $2 million fee based on a one-percent rate.[6]

_____

the model's time to take the photos, and that <u>we would negotiate an ongoing fee, sometimes called a royalty, which would be commensurate with the uses by the user of the image</u>. . . .

[**Ji's Counsel:**]  [D]o you have an idea of the numerical circulation of my client's picture by Bose?

[**Wolfe:**]  Yes.

[**Ji's Counsel:**]  And what is that understanding?

[**Wolfe:**]  That the picture was used on the product approximately 206,000 times. . . .

[**Ji's Counsel:**]  Based on your experience in negotiating compensation packages for modeling agencies and their models, do you have an opinion as to the compensation to which a model whose image is used on $206 million worth of merchandise might be entitled?

[**Wolfe:**]  I do.

[**Ji's Counsel:**]  What is that opinion? . . .

[**Wolfe:**]  [B]ased on my experience, I would negotiate for one-half of one percent to one percent, and if you take 206,000 uses at $999 at the low end of the scale, you're at approximately <u>$1 million is a reasonable utilization and a reasonable compensation to the model at the low end, and at the high end, I would say $2 million at the one percent</u>.

(Emphasis supplied.)

[6]For the same reason, we provide an excerpt from Ji's counsel's closing argument:

Let me tell you how we believe that you [the jury] should [determine damages].  We believe that you should follow the testimony, which was unchallenged, by Mr. Wolfe, who stated his experience with modeling agencies and models, and <u>he clearly told you that a reasonable fee</u>

Ji argues that although Wolfe was able to extrapolate maximum potential revenues based on the number of units Bose packaged, he could not determine actual revenues without knowing how many of those units Bose sold. This is, of course, true. But this could not have prejudiced Ji. The number of units Bose sold would have to be equal to or, more likely, less than the number of units Bose packaged. Therefore, the usage fee Ji's expert recommended was the upper end of a range based on what actual revenues could have been. Actual revenues were probably less, but Bose (perhaps against its interest) did not object and the jury was free to agree with Wolfe.

## 2. Jury Instructions

Ji proposed the following two instructions, and others, to the district court:

> [**Proposed Jury Instruction No. 22:**] If you find for the Plaintiff on her claims for violation of right to publicity, you should award Plaintiff an amount of money that the preponderance of the evidence shows will fairly

---

would be a usage fee, and I know it's large, but that is based on $206 million worth of commercial boxes. He said usage fees are the way that models like Ms. Ji are compensated. . . . From Mr. Wolfe, he's basically looked at the situation, and he said that a fee of one-half to one percent, one-half to one percent of the unauthorized use of her image on $206 million worth of merchandise would be a fair and reasonable fee. She's not a celebrity, she's not a top model, but Mr. Wolfe said that someone in a like situation, someone who used -- they used their image in unauthorized ways, a reasonable usage fee would be between $1 million and $2 million.

(Emphasis supplied.)

and adequately compensate Plaintiff for the damages she has sustained by virtue of Bose's appropriation and exploitation of Plaintiff's image without her express consent. If you find that the Plaintiff has been injured by Bose in violation of her rights under Florida Statute § 540.08, she is entitled to receive damages from Bose which may include a reasonable royalty.

[**Proposed Jury Instruction No. 23:**] A "royalty" can be established several different ways. One method of establishing a royalty is by the total amount of the [sic] Bose's profits resulting from its exploitation of Plaintiff's image.

At the charge conference, the district court stated that it would deliver the substance of proposed instruction 22 but not 23:

I will give the substance of 22. However, Bose's objections have been noted, and the instructions will certainly be consistent with this Court's prior rulings. On No. 23, I am not going to give that. We'll tell the jury about what compensatory damages are but not how to calculate them.

Ji's counsel did not object.

The next day, the district court instructed the jury on damages as follows:

If you find that [Ji] has proved her claim of a violation of her right to publicity, you may award her damages for any injury suffered as a result of that violation. That means that you must determine how much the plaintiff would have been paid for the uses to which Bose eventually put her image, which is referred to in the law as "compensatory damages."

The object of compensatory damages is to award the plaintiff the equivalent in money to any losses that she suffered. That requires you to consider all of the evidence and determine what would have been a fair value for the way that Bose eventually used the plaintiff's photographs.

-16-

At sidebar, before the case was sent to the jury, Ji's counsel objected to neither the district court's instruction as delivered nor its omission of proposed instruction 23.

Bose argues that Ji's failures to object result in waiver, or, alternatively, forfeiture of her instructional challenge.

The failure to object promptly and properly to an instruction generally forfeits an appellant's right to object on appeal. See, e.g., Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 20 (1st Cir. 2009) ("Defendants did not object to the instruction and they therefore forfeited their right to object on appeal."); see also Fed. R. Civ. P. 51(c)(1) ("A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection."); Fed. R. Civ. P. 51(c)(2)(B) (a party must "object[ ] promptly after learning that the instruction or request will be, or has been, given or refused"). "Our interpretation of Rule 51 is quite strict." Astro-Med, 591 F.3d at 20 (quoting Connelly v. Hyundai Motor Co., 351 F.3d 535, 544 (1st Cir. 2003)) (internal quotation marks omitted). "There is good reason for this strictness. We enforce our object-or-forfeit rules to compel litigants to afford the trial court an opportunity to cure [a] defective instruction and to prevent the litigants from ensuring a new trial in the event of an adverse verdict [or

-17-

diminutive damages award] by covertly relying on the error."  Id.

(second alteration supplied) (quoting Flynn v. AK Peters, Ltd., 377

F.3d 13, 25 (1st Cir. 2004)) (internal quotation marks omitted).

Forfeited objections may be reviewed for plain error only.  Id.

Ji counters with a single argument.  She urges us to

recognize, as some circuits have done, a judge-created exception to

Rule 51:  that a party need not object when doing so would have

been "futile and unavailing."  See, e.g., Gulliford v. Pierce

County, 136 F.3d 1345, 1348 (9th Cir. 1998) ("Where the district

court is aware of the party's concerns with an instruction, and

further objection would be unavailing, we will not require a futile

formal objection.").  According to Ji, an objection would have been

pointless because the district court was well aware of her position

on damages in light of earlier motion practice.

We have in the past rejected similar attempts to excuse

a party's failure to object.  See, e.g., Elliott v. S.D. Warren

Co., 134 F.3d 1, 6 (1st Cir. 1998) ("[W]e have held that strict

compliance with Rule 51 is mandatory and that a failure of

compliance will not be excused merely because the defaulting party

brought the same matter to the trial judge's attention more

specifically at some other time."); Monomoy Fisheries, Inc. v.

Bruno & Stillman Yacht Co., 625 F.2d 1034, 1036-37 (1st Cir. 1980)

(rejecting party's request to overlook its failure to object on the

ground that "an objection following the charge was unnecessary

-18-

because its position on the issue of mitigation had previously been clearly made known to the court and it was evident that a further objection would have been unavailing").  We did so, most recently, in Gray v. Genlyte Group, Inc., 289 F.3d 128, 134 (1st Cir.), reh'g denied, 306 F.3d 1151 (1st Cir. 2002) (denying rehearing en banc despite urging to recognize a futility exception to Rule 51).

In light of our precedent, our review of this claim is for plain error.  Torres-Rivera v. O'Neill-Cancel, 406 F.3d 43, 50 (1st Cir. 2005).  "To obtain relief under this standard, the party claiming error must show (1) an error, (2) that is plain (i.e., obvious and clear under current law) (3) that is likely to alter the outcome, and (4) that is sufficiently fundamental to threaten the fairness or integrity or public reputation of the judicial process."  Id. (quoting Connelly, 351 F.3d at 545) (internal quotation marks omitted).  "The requirement that the error is likely to alter the outcome is particularly important in this context because '[a]n erroneous jury instruction necessitates a new trial only if the error could have affected the result of the jury's deliberations.'"  Colon-Millin, 455 F.3d at 41 (quoting Allen v. Chance Mfg. Co., 873 F.2d 465, 469 (1st Cir. 1989)).

We need not linger on Ji's failure to satisfy these elements.  The district court's decision to omit Ji's proposed instruction 23 -- that a royalty can constitute a percentage of sales -- was not plain error for the same reasons that its decision

to order Bose to produce usage data in lieu of sales data was not an abuse of discretion.  See supra Part II.A.1.  Even if the omission were plain error (it was not), Ji has not shown that it likely altered the jury's damages award.  As discussed, Ji's testifying expert, Wolfe, extrapolated Bose's revenues and opined that a reasonable usage fee in this case could be as high as $2 million based on a one-percent rate.  See supra Part II.A.1.  The damages instruction that the district court delivered -- charging the jury "to consider all of the evidence and determine what would have been a fair value for the way that Bose eventually used the plaintiff's photographs" -- compelled the jury to consider, rather than disregard, Wolfe's testimony.  In this light, we struggle to see the probability that an additional instruction that royalties are sometimes calculated on the basis of sales would have resulted in a higher damages award.[7]

---

[7]Rule 51 was amended in 2003, subsequent to our opinion in Gray, 289 F.3d 128, to provide that "[a] party may assign as error . . . a failure to give an instruction, if that party properly requested it and -- unless the court rejected the request in a definitive ruling on the record -- also properly objected."  Fed. R. Civ. P. 51(d)(1)(B) (emphasis supplied).  But Ji neither relies on nor even references the amended rule.  Faigin v. Kelly, 184 F.3d 67, 87 (1st Cir. 1999) ("When put to his mettle, it is the appellant's burden to establish that he has preserved such a claim of [instructional] error."); see United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace") (quoting Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988)) (internal quotation marks omitted).
Even if we were to consider Ji's challenge preserved under Rule 51(d)(1)(B) and thus subject to de novo review, the challenge would nevertheless fail.  It is hornbook law that a properly

We also think Ji's proposed instruction 22, supra, undermines her general critique that the district court misunderstood damages under § 540.08 as compensatory in nature. Proposed instruction 22 specifically requested an instruction on compensatory damages ("you should award Plaintiff an amount of money that . . . will fairly and adequately compensate Plaintiff for the damages she has sustained") and was substantially similar to the instruction that the district court delivered.

In sum, Ji has not shown that the district court's order partially granting her motion to compel constituted an abuse of discretion. Nor has she shown that the district court's omission of her proposed instruction constituted plain error or that it likely altered the damages award. A new trial on damages is therefore unwarranted.

## B.  **Challenge to Summary Judgment Denial**

In their cross-appeals, Bose and White argue that trial on Ji's right-to-publicity and privacy claims should never have taken place in the first instance. They argue that the district court should have granted their motions for summary judgment on

preserved objection to the failure to give a requested jury instruction "constitutes reversible error only if it was prejudicial in light of the entire record." United States v. Buttrick, 432 F.3d 373, 376 (1st Cir. 2005). Here, as explained above, the omission of Ji's royalty instruction did not prejudice her in light of Wolfe's extensive testimony about an appropriate usage fee and the district court's charge that the jury must consider that evidence in assessing damages.

-21-

what they contend was a pure legal issue: whether the Voucher or the Release controlled. If the Voucher was unenforceable, as they claim, then the Release controlled and through it Ji relinquished all rights to her images.

We do not reach the merits of their argument because neither Bose nor White properly preserved it in a motion for judgment as a matter of law.[8]

Generally, the denial of a motion for summary judgment is not reviewable after a full trial and final judgment on the merits. See, e.g., Eastern Mt. Platform Tennis, Inc. v. Sherwin-Williams Co., 40 F.3d 492, 500 (1st Cir. 1994); Lama v. Borras, 16 F.3d 473, 477 n.5 (1st Cir. 1994) (declining to address the defendants' challenge because their "attack on the denial of summary judgment has been overtaken by subsequent events, namely, a full-dress trial and an adverse jury verdict."). "The rationale for this rule has been based on the procedural fact that a denial of a motion for summary judgment 'is merely a judge's determination that genuine issues of material fact exist. It is not a judgment, and does not foreclose trial on issues on which summary judgment was sought.'" Sherwin-Williams, 40 F.3d at 500 (quoting Glaros v. H.H. Robertson Co., 797 F.2d 1564, 1573 (Fed. Cir. 1986)). Thus, in order to

_____

[8]For the identical reason, we do not reach the merits of White's separate claim that the district court erred in denying White summary judgment on Bose's claims against it for breach of contract, misrepresentation, indemnification, and contribution.

-22-

preserve its challenge for appeal, a disappointed party must restate its objection in a motion for judgment as a matter of law ("JMOL"). See id. at 497; see also Fed. R. Civ. P. 50. If that too is unsuccessful, then the propriety of the district court's denial of JMOL is reviewable on appeal from final judgment. Sherwin-Williams, 40 F.3d at 497.

We have not recognized an exception to this rule, as some circuits have done, when a party's challenge is based on a circumscribed legal error, as opposed to an error concerning the existence of fact issues.[9] Instead, our rule is that even legal errors cannot be reviewed unless the challenging party restates its objection in a motion for JMOL. See, e.g., Rivera-Torres v. Ortiz Velez, 341 F.3d 86, 92-93 (1st Cir. 2003) (declining to review a party's challenge to the district court's denial of its motion for summary judgment based on a purported legal error concerning qualified immunity when that party failed to move for JMOL); Mauser v. Raytheon Co. Pension Plan for Salaried Employees, 239 F.3d 51,

---

[9]At least two other circuits have excused explicitly the failure to move for JMOL and have reviewed the challenge anyway if it was based on a purported legal error. See Chemetall GMBH v. ZR Energy, Inc., 320 F.3d 714, 720 (7th Cir. 2003); accord Ruyle v. Continental Oil Co., 44 F.3d 837, 841 (10th Cir. 1994). While this split may be resolved by the Supreme Court, see Ortiz v. Jordan, 316 Fed. App'x 449 (6th Cir. 2009), cert. granted, 130 S. Ct. 2371 (U.S. Apr. 26, 2010) (No. 09-737), we are bound by our precedents until the Supreme Court says otherwise. United States v. Holloway, 499 F.3d 114, 118 (1st Cir. 2007) ("it is axiomatic that new panels are bound by prior panel decisions in the absence of supervening authority").

55 (1st Cir. 2001) (declining to review a party's challenge to the district court's denial of its motion for summary judgment based on a purported legal error concerning ERISA liability when that party failed to move for JMOL).

Here, at the close of Ji's case, Bose moved for JMOL on the grounds that Ji failed to present sufficient evidence (1) to establish a violation of Chapter 93A, and (2) that she did not consent to Bose's use of her image (an element of both her right-to-publicity and privacy claims). White moved on the former ground only. Following the verdict, Bose orally renewed its motion for JMOL "with regard to liability."[10] White did the same. But at no point did either Bose or White restate their challenge that the Voucher was unenforceable as a matter of law. Accordingly, we deem that challenge waived.[11]

---

[10]Although seemingly broad, the word "liability" as used in Bose's renewed motion for JMOL cannot encompass the challenge that the Voucher was unenforceable because that ground was not articulated in its earlier motion for JMOL. Correa v. Hosp. San Francisco, 69 F.3d 1184, 1196 (1st Cir. 1995) ("The movant cannot use [a renewed motion for JMOL] as a vehicle to introduce a legal theory not distinctly articulated in its close-of-the-evidence motion for [JMOL].").

[11]We realize that the Supreme Court may address this issue in Ortiz. See supra note 9. We wish to add, therefore, that Bose's and White's challenge to summary judgment denial would be unreviewable even if it were not waived. Although Bose and White contend that their challenge presents a discrete legal issue, a fair reading of the record reveals that Bose and White sought resolution of conflicting factual inferences from competing contracts and deposition testimony surrounding their creation. This is evident in (1) the district court's rescript, which found that the parties' proffered evidence made it "abundantly clear"

-24-

## C.    **Attorneys' Fees**

Bose argues that the district court should have granted its motion for attorneys' fees.  According to Bose, Ji's Lanham Act claim was fabricated, entirely groundless, and nothing more than a ruse "to gain access to Bose's sensitive financial data in the hope of forcing an exorbitant settlement."  Bose contends that the district court failed to give sufficient weight to these factors and therefore abused its discretion by denying Bose's motion.

We review the denial of a motion for attorneys' fees for manifest abuse of discretion.  Boston's Children First v. City of Boston, 395 F.3d 10, 13 (1st Cir. 2005).  In doing so, we "confine our review to whether the district court has made a mistake of law or incorrectly weighed (or failed to weigh) a factor in its decision."  Richardson v. Miller, 279 F.3d 1, 3 (1st Cir. 2002). We review de novo the legal question of the meaning of "exceptional cases" under the Lanham Act.  Visible Sys. Corp. v. Unisys Corp., 551 F.3d 65, 81 (1st Cir. 2008).  For present purposes, we assume without deciding that Bose is a "prevailing party" under the Lanham

that "there is a genuine issue of material fact which must be resolved by a jury," and (2) the parties' appellate briefs, which refer extensively to conflicting deposition and trial testimony as evidence of the parties' intentions. See Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp., 51 F.3d 1229, 1235-36 (4th Cir. 1995) (refusing to review summary judgment denial based on ambiguity in competing contract documentation).  Because we agree with the district court that fact issues precluded summary judgment, Bose's and White's challenge falls under the general prohibition against reviewing summary judgment denials after a full trial and final judgment on the merits.

Act.  15 U.S.C. § 1117(a) (providing for attorneys' fees to "the prevailing party").

The Lanham Act provides for attorneys' fees only in "exceptional cases." Id.  We have yet to construe this criterion in the context of a prevailing defendant. Cf. Tamko Roofing Prod., Inc. v. Ideal Roofing, Co., 282 F.3d 23, 31 (1st Cir. 2002) (construing criterion in context of prevailing  plaintiff, and holding that "[i]n exceptional cases, attorneys' fees may be appropriate in circumstances where the acts of infringement were malicious, fraudulent, deliberate, or willful" or "when equitable considerations justify such awards") (quoting S. Rep. 93-1400, at 5, 6 (1974)) (internal quotation marks omitted).  And we need not do so today:  here, both parties agree that the standard applied by the district court -- requiring "something less than . . . bad faith," such as a "plaintiff's use of groundless arguments, failure to cite controlling law and generally oppressive nature of the case" -- was correct.  For purposes of this appeal, we assume without deciding that this is true.

Under this standard, the district court's decision to deny attorneys' fees under § 1117(a) was well within the bounds of its discretion.  Although Ji's Lanham Act claim was defeated on summary judgment, her claim was not entirely unfounded.  As the district court observed, Ji met her summary judgment burden of showing both similarity of likeness and similarity of marketing

channels, two of the factors used to assess the likelihood of consumer confusion under the Lanham Act.[12]

Ji's motion practice concerning her routine discovery requests similarly fails to satisfy the Lanham Act's exceptionality criterion. There is nothing particularly oppressive about attempting to discover financial information in connection with an intellectual property dispute. Although Ji initially sought that information vis-a-vis her Lanham Act claim, once that claim was dismissed she requested it again in order to prove damages under § 540.08. On that theory, the district court ultimately compelled Bose to produce some of the information Ji requested, and she used that information at trial. See supra Part II.A.1. We see no evidence in the record that Ji sought or employed that information for some ulterior purpose.

The inaccuracies in Ji's verified complaint, much touted by Bose as evidence of perfidiousness, are unfortunate -- even sloppy -- but they do not rise to the level of improper conduct

---

[12]At oral argument, Bose's counsel asserted that the district court improperly considered the ultimate success of Ji's other claims in determining whether to award attorneys' fees on Ji's unsuccessful Lanham Act claim. We do not read the district court's rescript quite that way, but in any event we do not reach the matter because Bose did not raise this argument in its briefs. Piazza v. Aponte Roque, 909 F.2d 35, 37 (1st Cir. 1990) ("[A] court of appeals will not consider an issue raised for the first time at oral argument.").

necessary to show that this case is exceptional.  Many of the examples Bose provides are jejune; others merely aggrandize Ji's status in immaterial ways.  This, without more, is not enough.

The district court also properly rejected Bose's request for fees under § 1927.  In Jensen v. Philips Screw Co., we held that the plain language of § 1927 sanctions unreasonable multiplication, and not commencement, of proceedings:  "Congress's use of the verb 'multipl[y]' in the text of the statute clearly contemplates that, to be sanctionable thereunder, conduct must have an effect on an already initiated proceeding. . . . [A] lawyer cannot violate section 1927 in the course of commencing an action." 546 F.3d 59, 65 (1st Cir. 2008).  For this reason, we refused to sanction an attorney under § 1927 for failing "to vet [his client] or investigate the bona fides of his claim."  Jensen, 546 F.3d at 65.  Here, because Bose's argument is based solely on the failure of Ji's counsel to vet the representations in her verified complaint, fees under § 1927 are foreclosed.

## III.  CONCLUSION

For these reasons, the judgment of the district court is **affirmed**.  The parties shall bear their own costs.