# United States Court of Appeals
## For the First Circuit

No. 13-1328

LIZA D. ROSA-RIVERA; EDGARD FRANQUI-RAMOS;
F.A.F.R., minor child represented by his parents,

Plaintiffs, Appellants,

v.

DORADO HEALTH, INC., d/b/a Alejandro Otero López Hospital, Inc.,

Defendant, Appellee,

JOSEPH CAPRE-FEBUS; CARLOS E. GONZÁLEZ-CAMACHO; JOHN DOE;
JANE DOE-CAPRE; COMPANIES A, B AND C; MARY DOE-GONZÁLEZ;
CONJUGAL PARTNERSHIP GONZÁLEZ-DOE;
CONJUGAL PARTNERSHIP CAPRE-DOE,

Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Camille L. Vélez-Rivé, U.S. Magistrate Judge]

---

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

---

Michelle A. Ramos-Jiménez, with whom Luis Rafael Rivera Law Office was on brief, for appellants.
Kenneth Colón for appellee.

May 29, 2015

**THOMPSON**, **Circuit Judge**.    Alleging that negligent conduct occurred during the birth of their son, F.A.F.R., his parents filed a medical malpractice suit.  They prevailed against the defendant physician but the jury found no liability on the co-defendant hospital's part.  The plaintiffs sought a new trial, the motion was denied, and they appealed.  Concluding this denial was appropriate, we affirm.

## I. BACKGROUND

Liza Rosa-Rivera and Edgard Franqui-Ramos, on their own behalf and on behalf of their minor son, F.A.F.R., ("Plaintiffs") filed a diversity-based lawsuit against appellee, Dorado Health, Inc., d/b/a Alejandro Otero López Hospital, Inc. ("Dorado Health" or "the hospital"), along with Dr. Joseph Capre-Febus.[1] Plaintiffs alleged that Dr. Capre-Febus (the physician who delivered F.A.F.R.) and Dorado Health (the hospital where the delivery took place) acted negligently in connection with the birth of their son, resulting in F.A.F.R. suffering from trauma, shoulder dystocia, and ultimately Erb's Palsy.  The jury was partially convinced.  It concluded that while both Dr. Capre-Febus and Dorado Health were negligent, only Dr. Capre-Febus's negligence proximately caused F.A.F.R.'s impairments.  The judgment ordered

---

[1] Another physician was named as well, but a settlement was reached prior to trial.

the doctor to compensate the Plaintiffs $807,500. Plaintiffs moved for a new trial under Federal Rule of Civil Procedure 59(a), advancing the same arguments they do here.[2] The district court, finding merit to none, denied the motion and this appeal followed.

## II. ANALYSIS

Plaintiffs make three claims of error, the first being that the trial judge erred in not allowing their attorney to ask a Dorado Health nurse leading questions. The second claimed misstep was the judge's decision not to include one of their proposed jury instructions. And finally, Plaintiffs insist that the jury rendered an inconsistent verdict. We take the issues in that order.

## A. LEADING THE WITNESS

Sara Montalvo, who at the time of trial had been working at Dorado Health since 1984, was the nurse that assisted in F.A.F.R.'s delivery. Plaintiffs called Montalvo to testify, and fairly early on in the questioning counsel began posing leading questions. Defense counsel objected but the attorney for Plaintiffs persisted that leading questions were appropriate because Montalvo was affiliated with Dorado Health. The judge sided with the defense,

---

[2] Plaintiffs also sought to amend the judgment under Federal Rule of Civil Procedure 59(e) because the judgment incorrectly indicated that the jury found no negligence on Dorado Health's part. Recognizing the mistake, the court issued an amended judgment accurately reflecting the verdict.

noting that Montalvo was not a hostile witness.  When Plaintiffs'
counsel pressed that under the rules hostility is not the only
indicator for leading a witness, and it is appropriate when "the
witness is identified with the other party," the judge stated, "I
don't agree . . . If she becomes hostile, you can lead all the
way." The judge then sustained the defense's objection to the few
additional leading questions asked during the remainder of
Montalvo's examination.

Plaintiffs claim the court's ruling was off-base because a
witness's hostility is not the only justification for posing
leading questions.  And, according to the Plaintiffs, because they
could not pose leading questions, the examination of Montalvo was
"a disaster," resulting in a miscarriage of justice justifying a
new trial.[3]

Plaintiffs are correct on the first point.  Leading questions
are generally disfavored on direct examination but "[o]rdinarily,
the court should allow leading questions . . . when a party calls
a hostile witness, an adverse party, or a witness identified with
an adverse party."  Fed. R. Evid. 611(c)(2) (emphasis added).

---

[3] In their brief, Plaintiffs also indicate that the judge, at one
point, did not allow them to impeach Montalvo with her deposition
testimony.  It is unclear where the Plaintiffs are going with this
pithy, isolated reference.  To the extent they are attempting to
assign error to the judge's conduct, the argument is waived for
failure to develop.  See González-Morales v. Hernández-Arencibia,
221 F.3d 45, 48 n.3 (1st Cir. 2000).

Consequently, it seems likely that the judge's ruling was based on an error of law and therefore an abuse of discretion. See Ira Green, Inc. v. Military Sales & Serv. Co., 775 F.3d 12, 18 (1st Cir. 2014). But even assuming this to be the case, the judge's potential misapplication of the rule is not enough. Prejudice is required for a party to prevail on a claim of improper exclusion of leading questions. Rodriguez v. Banco Cent. Corp., 990 F.2d 7, 13 (1st Cir. 1993); Fed. R. Evid. 103(a). For starters, this would require a proffer on Plaintiffs' part, in other words, a showing of some specific information that counsel might have elicited if permitted the use of leading questions. Rodriguez, 990 F.2d at 13; see also Fed. R. Evid. 103(a)(2). That component is missing here.

Neither at the sidebar with the judge, nor in the motion for a new trial, did Plaintiffs offer any indication as to what they might have been able to extract from Montalvo given some leeway with the questioning. The same goes for their brief to this court, as well as at oral argument, despite the panel pointing out the proffer's omission. It was not until post oral-argument, via a Federal Rule of Appellate Procedure 28(j) letter (ostensibly submitted to supplement their list of authorities), that Plaintiffs indicated what they would have proven had they been allowed to examine Montalvo with leading questions, e.g., omitted

nursing notes, lies about her findings, and deficient hospital protocols. Not only is it improper to advance new arguments in a 28(j) letter, <u>Ruskai</u> v. <u>Pistole</u>, 775 F.3d 61, 66-67 (1st Cir. 2014), but it is far too late in the game. <u>See, e.g.</u>, <u>United States</u> v. <u>Bayard</u>, 642 F.3d 59, 63 (1st Cir. 2011) (providing that the appellant's failure to brief the issue waives it).

Given their failure to establish prejudice, Plaintiffs' first argument affords no relief. We move on.

## B. JURY INSTRUCTIONS

Prior to trial, Plaintiffs proposed jury instructions, the operative one for our purposes being Instruction 16, which (for now) it suffices to note concerned the obligation imposed on hospitals to carefully select and monitor privileged physicians. After the parties rested, counsel and the judge debated the merit of Instruction 16, along with other jury instruction and verdict form matters. The judge, as later explained in the judgment denying Plaintiffs' motion for a new trial, decided instead to give other instructions which she felt in essence covered the same content as Instruction 16 and, unlike that instruction, conformed to the evidence presented at trial. To this court, Plaintiffs make a circumscribed argument. They do not claim that any of the jury instructions issued by the court were problematic, rather they simply persist that Instruction 16 should have made the cut.

Whether Plaintiffs properly preserved their objection to Instruction 16's non-inclusion is up for debate. The district court, in the judgment denying the new trial motion, indicated that the Plaintiffs had properly objected. On appeal, Dorado Health claims otherwise and Plaintiffs do not say one way or the other.

Federal Rule of Civil Procedure 51 requires the court to give parties the opportunity to object to its proposed jury instructions before closing arguments and the instructions are delivered. Fed. R. Civ. P. 51(b)(2). For an objection to be timely (except in circumstances not relevant here), it must be made at this point. Fed. R. Civ. P. 51(c)(2)(A). Failure to do so means the objection is forfeited and reviewed for plain error only, the idea being that the trial judge should be afforded the opportunity to cure the alleged error and litigants stopped "from ensuring a new trial in the event of an adverse verdict by covertly relying on the error." Booker v. Mass. Dep't of Pub. Health, 612 F.3d 34, 41, 43 (1st Cir. 2010); see also Fed. R. Civ. P. 51(d)(2).

It is clear, at least, that Plaintiffs did not object at the juncture required by Rule 51(c)(2)(A). When the judge asked, just prior to closing arguments, whether Plaintiffs' counsel had any issues with the final jury instructions and verdict form, counsel mentioned a since-resolved issue with the verdict form, but

indicated no concerns or qualms with the jury instructions. However, what is less clear is whether this failure to object definitively places us in the plain error zone.

While a proper request (we have that) and a proper objection (we are missing that) is required for a party to assign error to the court's failure to give an instruction, the objection requirement does not apply when "the court rejected the request in a definitive ruling on the record." Fed. R. Civ. P. 51(d)(1)(B); see also Ji v. Bose Corp., 626 F.3d 116, 126 n.7 (1st Cir. 2010). In those instances, the challenge is deemed preserved and subject to de novo review. Ji, 626 F.3d at 126 n.7.

Here, there was a lot of back and forth on the record regarding the jury instructions. It is not the easiest exchange to follow but it appears that, at one point, the court intended to include some iteration of Instruction 16 but then was convinced otherwise by defense counsel, though even then it is not entirely clear what instruction the court was nixing. Compounding the confusion is Plaintiffs' indication in their brief to this court that the transcripts did not fully reflect the exchange on Instruction 16. Given the difficulty we have discerning "a definitive ruling on the record," Fed. R. Civ. P. 51(d)(1)(B), and the fact that Plaintiffs do not rely on, or even reference, Rule 51(d)(1)(B)'s relaxed objection requirement, we deem Plaintiffs'

objection to Instruction 16's non-inclusion unpreserved.  See Ji, 626 F.3d at 126 n.7 (treating plaintiff's jury instruction claim as unpreserved when plaintiff failed to make a Rule 51(d)(1)(B) argument).  Our review is therefore for plain error only.  Booker, 612 F.3d at 43; Fed. R. Civ. P. 51(d)(2).

With that decided we turn to the language of the relevant jury instructions.  Plaintiffs' proposed Instruction 16 sought to inform the jury that "[h]ospitals have a continuing obligation to care for the health of their patients" by carefully selecting the physicians they offer privileges to, requiring the physicians' professional improvement courses and technological knowledge be up to date, monitoring the physicians and intervening in the event of an "obvious act of medical malpractice," and revoking a physician's privileges "in the case of repeated or gross acts of malpractice." Plaintiffs lifted this concept from a Puerto Rico case, Marquez Vega v. Martinez Rosado, 16 P.R. Offic. Trans. 487 (1985), and indeed the proposed instruction accurately stated what the case held.

The trial court; however, focused on another aspect of that case, directly quoting Marquez Vega in Instruction 20: "As a rule, the hospital should not be held liable for the exclusive negligence of an unsalaried physician, who was first and foremost entrusted with [the] patient's health."  The court coupled this with

- 10 -

Instruction 19 (titled "Vicarious Responsibility of Hospitals") which, citing Núñez v. Citrón, 15 P.R. Offic. Trans. 786 (1984) and P.R. Laws Ann. tit. 31, § 5142, provided that "[h]ospitals and doctors have a duty to offer their patients the attention that satisfies the demands that are generally recognized by the medical profession in light of the modern means of communication and education" and that a breach of such duty creates non-contractual responsibility on the part of the hospital.

To this court, Plaintiffs trumpet Marquez Vega as firmly establishing that hospitals owe patients in Puerto Rico the degree of care that a reasonable and prudent person would exercise in the same circumstances. They persist that according to Marquez Vega, a hospital's obligation to protect patient health extends beyond the granting of physician privileges, with the various dictates of Instruction 16 applying throughout a doctor's tenure. Pointing to Dr. Capre-Febus's testimony that he had been sued for malpractice eight times,[4] Plaintiffs make the leap that Dorado Health failed to carefully select and then monitor the doctor, and therefore the jury should have been instructed on the hospital's continuing obligations. Dorado Health counters that any attempt on Plaintiffs' part to show that the hospital failed to properly

_____

[4] In their brief, Plaintiffs state that the doctor was sued at least ten times but the testimony they cite indicates there were eight law suits.

- 11 -

supervise Dr. Capre-Febus was entirely unsupported by the evidence at trial and, therefore, the proffered instruction rightly rejected.

As we said, proposed Instruction 16 accurately stated the law but Instruction 19 and 20 did as well. Even so, we are not fully convinced that the two latter instructions, as the trial court concluded, "cover in essence the content of plaintiffs' proposed Instruction No. 16." Instruction 16 explains very specific concepts relative to a hospital's duty to monitor physicians and intervene in certain instances, e.g., in the face of repeated malpractice, while Instruction 19 relates more generally to a hospital's duty to conform to generally accepted, modern medical standards and Instruction 20 deals with a wholly different concept, that is, when a hospital is not liable for an unsalaried physician.

That being said, "the judge is not obligated to instruct on every particular that conceivably might be of interest to the jury," rather the real test is whether as a whole "the instructions adequately illuminate the law applicable to the controlling issues in the case without unduly complicating matters or misleading the jury." United States v. DeStefano, 59 F.3d 1, 3 (1st Cir. 1995); see also United States v. Fermin, 771 F.3d 71, 80 (1st Cir. 2014). Here, the proffered instructions did convey the thrust of Puerto

Rico vicarious liability law, if not the more specific points Plaintiffs sought to make.

The other problem for Plaintiffs is the dearth of evidence supporting the theory of liability contained in Instruction 16, a vacuity that did not go unnoticed by the trial judge or defense counsel. A party is entitled to have its legal theory presented to the jury if it is supported by the evidence. Sullivan v. Nat'l Football League, 34 F.3d 1091, 1107 (1st Cir. 1994). Here, Plaintiffs, as explained in their brief, sought to use the previous lawsuits to show that Dorado Health failed to carefully select and then monitor Dr. Capre-Febus. Yet Plaintiffs only point us to Dr. Capre-Febus's testimony which indicated that he had been sued eight times.[5] On the selection component, the evidence Plaintiffs cite actually indicates that Dr. Capre-Febus had never been sued at the time he was initially granted privileges, a fact which the hospital had inquired about. As for the monitoring piece, they offer no evidence relative to what Dorado Health knew about the suits, the nature of the alleged malpractice (other than that one dismissed suit involved shoulder dystocia), whether Dr. Capre-Febus was ever

---

[5] Plaintiffs also claim the record reflects that Dorado Health did not take any action against Dr. Capre-Febus nor investigate the allegations in the various complaints; however, the record support cited by Plaintiffs says no such thing. Dr. Capre-Febus offered no testimony on either point.

- 13 -

actually found to have committed malpractice, or what hospital policies were for monitoring lawsuits.

A finding of plain error is a rarity in civil cases, Contour Design, Inc. v. Chance Mold Steel Co., Ltd., 693 F.3d 102, 112 (1st Cir. 2012), and this case is more the norm than the exception. Ultimately, a trial judge has wide latitude in deciding how to best communicate complicated rules to the jury, DeCaro v. HASBRO, Inc., 580 F.3d 55, 63 (1st Cir. 2009), and the judge here did not overstep. We find no plain error.

## C. INCONSISTENT VERDICT

Plaintiffs' final argument is a brief, tag-along to the previous issue. They claim that the jury rendered an inconsistent verdict because it supposedly assigned fault to Dorado Health after finding its negligence was not a proximate cause of F.A.F.R.'s injury. The alleged inconsistency, say the Plaintiffs, was due to the court's failure to include Instruction 16.

Plainly put, we fail to see any inconsistency in the verdict. On the verdict form, the jury answered "yes" when asked whether Dorado Health was negligent and "no" when queried whether that negligence caused F.A.F.R.'s impairments. Nothing inconsistent there. A successful medical malpractice claim under Puerto Rico law, requires a party to establish "(1) the duty owed; (2) an act or omission transgressing that duty; and (3) a sufficient causal

- 14 -

nexus between the breach and the harm." Marcano Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005); see also P.R. Laws Ann. tit. 31, § 5141. The jury simply found the third component lacking.

The jury then inserted a monetary amount for F.A.F.R.'s physical impairment, pain and suffering, and reduction of potential income respectively, which the verdict form explicitly instructed the jury to do if it found either Dr. Capre-Febus or Dorado Health caused the minor plaintiff's injuries. Again, nothing irreconcilable there.

No more needs to be said. Plaintiffs' claim of inconsistency is meritless.

### III. CONCLUSION

For the reasons made plain above, the court did not err.

Affirmed.